No. 9653.

MATHEWS, ET AL. *v.* MATHEWS, ADMINISTRATOR.

Decided Nov. 8, 1920.   Rehearing denied Jan. 10, 1921.

Action by administrator to recover property alleged to belong to estate of decedent.   Judgment for plaintiff.

*Reversed.*

1. FRAUD—*Burden of Proof.*  The burden of proving fraud is upon the party alleging it.

2. REAL PROPERTY—*Setting Aside Deed—Degree of Proof.*  To set aside duly and formally executed instruments conveying title to real property on the ground of fraud, the evidence must be of greater strength and probative force than in ordinary civil cases; to warrant such relief, it must be direct, strong, highly convincing, clear, precise and indubitable.

3. JUDGMENT—*Unsupported by Evidence.*  Upon review of the case it is held that the evidence fails to establish a single allegation of the complaint and the judgment is reversed with directions to dismiss the action.

*Error to the District Court of the City and County of Denver, Hon. John T. Shumate, Judge.*

Mr. BENJAMIN GRIFFITH, Mr. JOHN H. LEIPER, for plaintiffs in error.

Mr. JOSEPH N. BAXTER, for defendant in error.

MR. JUSTICE BAILEY delivered the opinion of the court.

THIS cause is here on writ of error to review a judgment of the District Court of the City and County of Denver, wherein it is decreed that plaintiffs in error hold in trust certain real and personal property, which they are directed to turn over to a trustee appointed by the court, for the benefit of the estate of Cornelius M. Mathews, of which estate plaintiff is administrator, with will annexed.  The parties are all brothers.

The first cause of action alleges in substance that plaintiff

is the administrator of the will of his brother, Cornelius, which had been admitted to probate in Ohio, and in this state as a foreign will. This instrument, after devising certain specific property, located in Ohio, provides that the remainder of the property of the testator, without describing its character, extent or whereabouts, be equally divided between the persons therein designated and named as legatees. It is then alleged that the estate is insolvent and that the specific property devised by the will has been sold to pay debts of the estate. It is further therein alleged that a certificate for certain shares of stock in a Colorado corporation, now in the hands of Jerome Mathews, was made to Cornelius in his lifetime, had never been transferred, was his property at the time of his death, and now constitutes part and parcel of his estate. That such certificate was pledged to a third person by Cornelius for a small sum of money, that it was redeemed by Jerome with money belonging to Cornelius, and that the former now declines to surrender it.

In the second cause of action it is alleged that Jerome and James Mathews held in trust, having paid no consideration therefor, certain real property in Elbert County, Colorado, for Cornelius, aggregating 3600 acres more or less; that eight hundred and eighty acres of the land was conveyed without consideration by Cornelius to Jerome with intent to defraud creditors of Cornelius; that the eight hundred and eighty acres, together with the remainder of the land, was to be held and disposed of for the benefit of Cornelius. That, in addition to other transactions therein at length set forth, a portion of such land was exchanged for certain property in Denver, Colorado, the title to which was vested in Jerome, who refuses and declines to turn over the same, or to account for the rents and profits thereof to plaintiff, as the legal representative of the estate of Cornelius.

The third cause of action alleges substantially that at the time of the death of Cornelius there was approximately $12,000.00 worth of horses and cattle, belonging to him, in

possession of Jerome, and that Jerome has converted the same to his own use. The complaint sets out in detail the method by which the stock is claimed to have come into possession of Jerome.

The fourth cause of action in brief details that certain residence property in Denver, Colorado, was purchased with money belonging to Cornelius, the title to which, to defeat creditors of Cornelius, was held in the name of James, but under the control of Jerome, which was sold by James for $3,260.00, and the money wrongfully converted by the defendants to their use and benefit.

The fifth cause of action sets forth a letter written by Jerome to Cornelius, wherein it is alleged the trust relied upon by plaintiff is disclosed and admitted by Jerome; also an alleged declaration of trust by Cornelius, wherein he directs that all of his property in the state of Colorado be distributed among his relatives, including the two plaintiffs in error, as therein specified.

The answer to the first cause of action denies that the certificate of stock is the property of the estate, and alleges that it was redeemed by Jerome with his own funds, and an offer is made to deliver the certificate to the estate upon payment of the amount paid by Jerome to redeem it. For further answer it is alleged that the certificate is the property of Jerome, under an adjustment of mutual accounts, between Cornelius and himself, had in 1909. The statute of limitations is also plead in defense of each and every of the several causes of action relied upon.

The answer to the remainder of the complaint in substance denies all the material allegations, and declares that part of the land involved was the homestead of James C. Mathews, that another parcel was the homestead of the wife of Jerome, that other parcels thereof were acquired by Jerome from third persons, either by devise or purchase, and that as to the major portion of the land involved Cornelius never at any time or at all had title to, or right or interest therein of any sort or kind.

The trial court found the issues in favor of the plaintiff

upon the first cause of action, and ordered the stock certificate in question turned over to the trustee for the benefit of the estate. On the second cause of action the decree recites that Cornelius in 1909 conveyed to Jerome certain lands aggregating nine hundred and twenty acres, in trust nevertheless for Cornelius, and that Jerome converted the lands to his own use. After describing other tracts of the parcel involved, as not belonging to Cornelius, but which were exchanged, together with the nine hundred and twenty acres, for the improved property in Denver, all of that Denver property is declared to be the property of the estate of Cornelius, and ordered transferred to the trustee for the use of such estate. In reference to the live stock the court found that it was of the value of $12,000.00, and held by Jerome and James in trust for Cornelius. The Denver residence property mentioned in the fourth cause of action, standing in the name of James, was specifically held to be the property of Jerome and James, by the court, but in the fifth cause of action, in finding that the letter set out therein was a declaration of trust in favor of Cornelius, the court there finds such Denver property to likewise be the property of Cornelius, and also included in the trust. In fact, the decree found that all of the property mentioned in the complaint and involved in the suit was and is the property of Cornelius, and that it now belongs to his estate.

The object of plaintiff in his suit was to set aside duly and formally executed instruments conveying title to real estate, and to also nullify other transactions concerning the purchase, sale and transfer of personal property, on the ground of fraud. The burden of proof to show the alleged fraud was of course upon him; to establish such fact, so as to have the deeds and sale transfers set aside and a trust declared, the evidence must be of greater strength and probative force than in ordinary civil cases; indeed, the evidence to warrant such relief under such circumstances must be direct, strong and highly convincing. *Tourtelotte v. Brown*, 4 Colo. App. 377, 36 Pac. 73. It must be clear,

precise and indubitable. *D. & R. G. R. R. Co. v. Sullivan,* 21 Colo. 302, 41 Pac. 501.

It appears conclusively that the stock certificate involved was given by Cornelius as collateral security for the payment of a loan made for his own use, and that Jerome redeemed it before the death of Cornelius for $866.00. It appears that the certificate was given by Cornelius to Jerome in a settlement between the brothers had in 1909. Although it is contended that there was no such settlement, it, however, appears beyond question from the evidence contained in the record, that Cornelius was at that time indebted to Jerome in the sum of $10,453.72, and that a settlement was then had which showed that amount to be due Jerome from Cornelius. This is established by original checks, vouchers and other documents, representing transactions extending over several years, during which period Cornelius appears to have been constantly pressed for money, which Jerome supplied, and also that Jerome assisted him in other ways, to prevent his property being seized by creditors. The statement of accounts is not disputed or questioned as to any item whatever. In 1909, upon request of Jerome for security for monies so advanced, Cornelius deeded to him the nine hundred and twenty acres of land originally owned by him, or what remained of it, about eight hundred and eighty acres, and likewise turned over to Jerome certain live stock, cattle, horses, etc., which completely divested Cornelius of property of every kind and nature in Colorado.

The land last above mentioned was included in the forty-one hundred and sixty acres which, together with certain live stock and farming implements, were traded by Jerome and his wife to one Rudolph, for the Lucerne Apartments in Denver and about $2,500.00 in cash. It is conclusively shown that outside of the land conveyed by Cornelius to Jerome, the remainder of the forty-one hundred and sixty acres was made up of land purchased direct by Jerome under contract from The Union Pacific Land Company, known as Union Pacific railroad land, together with a homestead

belonging to James of one hundred and sixty acres, three hundred and twenty acres received by devise by Jerome from another brother, John, the latter's homestead, three hundred and twenty acres homestead land purchased by Jerome at sheriff's sale, property of a third person, and three hundred and twenty acres the homestead of Jerome's wife. All of this land, upwards of thirty-odd hundred acres, had been acquired after Cornelius removed from Colorado, and the eleven hundred and twenty acres, described as homestead land, after his death. This particular eleven hundred and twenty acres was secured by patents direct from the government, as noted above and manifestly could not have been acquired with money belonging to Cornelius, or any other outside person. The record is barren of testimony having a tendency even to show the expenditure of any money belonging to Cornelius, in any of these transactions, including the purchase of the so-called railroad land. There is no evidence whatever upon which the findings of the trial court can properly be upheld and approved. The letter written by Jerome to Cornelius is the only matter which has any tendency to even suggest the existence of a trust in favor of the latter. Beside, its contents is so vague, uncertain and indefinite that any conclusion to that effect amounts to no more than mere conjecture, and titles may not be thus vested or divested. Moreover, the evidence established affirmatively a contrary situation. The letter merits no serious consideration as a basis for decreeing a trust. In general the evidence fails to establish a single allegation of the complaint, nor does it contain anything to support or uphold the theory of a trust in favor of Cornelius as to any part of the property involved. The judgment will therefore be reversed and the cause remanded, with directions to dismiss the complaint for lack of equity, and because of a total failure of proof to make out any cause of action whatsoever.

Judgment reversed and cause remanded with directions.

MR. CHIEF JUSTICE GARRIGUES and MR. JUSTICE ALLEN concur.