279 F.2d 654
 Edna WINSLETT, Edna Winslett, as Administratrix of the Estate of Fred Winslett, deceased, and Catherine Jean Winslett, by her next friend, Edna Winslett, Appellants,
v.
M. M. ROZAN, William Z. Rozan, and all other unknown persons who claim any interest in this action, Appellees.
 No. 6253.
 United States Court of Appeals Tenth Circuit.
 May 13, 1960.
 
 Kenneth Balcomb, Glenwood Springs, Colo. (Herbert Gordon, Meeker, Colo., and Robert Delaney, Glenwood Springs, Colo., on the brief), for appellants.
 Jerry L. Smith, Denver, Colo. (Richard H. Shaw, Denver, Colo., on the brief), for appellees.
 Before MURRAH, Chief Judge, and BRATTON and LEWIS, Circuit Judges.
 MURRAH, Chief Judge.
 
 
 1
 In this diversity suit by appellants to quiet title to an undivided one-half mineral interest in some 4,000 acres of Colorado ranch land, the principal question is the validity of a 1946 mineral deed from appellant, Edna Winslett, and her deceased husband, Fred Winslett, to appellee, M. M. Rozan, purporting to convey this mineral estate. The trial court held the deed valid, and that by virtue of a subsequent deed, title resided in appellee, William Z. Rozan.
 
 
 2
 Appellant, Edna Winslett, in her own right and as administratrix for the estate of her husband, and next friend for their child, asserts that the deed is void because she and her husband were tricked into signing it, believing it to be an oil and gas lease; that William Z. Rozan received the property with knowledge of such fraud. In the alternative, appellant asserts ownership under Colorado's color-of-title statute of limitations by virtue of possession and payment of taxes on the land for seven consecutive years.
 
 
 3
 The challenged instrument was admittedly signed by the Winsletts and witnessed by their neighbor, Z. B. Wise, on the date shown thereon. It was acknowledged before a notary public the following day in statutory form. Some ten years later, it was filed of record, and is therefore admissible in evidence as prima facie proof of its free, voluntary, and proper execution, acknowledgment, and delivery, irrespective of the lapse of time between the date of execution and date of recordation. Colo.Rev.Stat.1957, Cum.Supp., § 118-6-1; Colo.Rev.Stat. 1953, § 118-6-4. The title to the mineral estate described in the deed thus resides prima facie in Rozan, and the heavy burden was of course upon appellant to prove by clear and convincing evidence that the signatures on the deed were fraudulently obtained. See Olinger Mutual Benefit Ass'n v. Christy, Colo., 342 P.2d 1000, and cases cited therein; Lesser v. Lesser, 128 Colo. 151, 250 P.2d 130; Rand v. Anderson, 126 Colo. 287, 248 P.2d 737; Mathews v. Mathews, 69 Colo. 333, 194 P. 358; Butsch v. Smith, 40 Colo. 64, 90 P. 61. Upon a trial without a jury, the trial court concluded that the evidence of fraud was "far from clear." The lawsuit turns primarily on the credibility of the three surviving witnesses, who gave divergent versions of the circumstances under which the instrument was executed and acknowledged. And to that extent it goes without saying that we will not disturb the trial court's judgment unless clearly and palpably erroneous. Rule 52(a), F.R.Civ.P., 28 U.S.C. A.
 
 
 4
 A brief résumé of the conflicting evidence will suffice. Mrs. Winslett's recollection is to the effect that M. M. Rozan came to their ranch on the day in question in 1946, accompanied by Wise; that Wise introduced Rozan, saying that Rozan wanted to lease their land for oil and gas and that he had leased his land to Rozan; that Rozan said he was interested in drilling and wanted to lease; that she was terribly upset and excited over their premature baby, who they were to bring home from the hospital that day; that her husband met her and the others at a sheep corral about three miles from their ranch house, and after a few minutes conversation she was handed some papers which purported to convey an oil and gas lease on their lands; that she and her husband signed the papers on the fender of an automobile and Wise witnessed them; that they never received any consideration to her knowledge and never saw Rozan afterwards for approximately eleven years; that meanwhile, she had leased the lands to Continental Oil Company and production was obtained, whereupon Rozan had filed his deed of record, thus clouding their title to the minerals.
 
 
 5
 Z. B. Wise testified that he went with Rozan to the Winslett sheep corral on the day in question; that the Winsletts signed what he believed to be an oil and gas lease in his presence, which he witnessed with his signature; that he was sure the instrument was an oil and gas lease, though he had not read it. He also testified, contrary to Mrs. Winslett, that the four of them went from the sheep corral to the Winslett ranch house, where the instrument was signed on a table.
 
 
 6
 M. M. Rozan testified that as a buyer of oil and gas leases and mineral interests in that vicinity, he went to the Winslett ranch with Wise; that he first talked to the Winsletts about a ten-year oil and gas lease on the land for $1 per acre, and $1 per acre annual delay rental, with the usual 12½% royalty; that when he was told that they were negotiating with someone else for a lease, he started talking to them about buying a one-half interest in the minerals on the basis of $2 per "mineral acre," or a net of $1 per acre. He further testified that he wrote out part of the deed with pen and ink, and after it appeared that the description of the property would be long, he went to his car and got a portable typewriter, brought it into the kitchen of the ranch house and filled out the description from tax receipts furnished by Mrs. Winslett, after which the Winsletts signed the deed, and Wise witnessed it; that he paid the Winsletts $100 at this time as the deed recited, and $3,900 later, though he could show no receipt; that on the next day he and the Winsletts went to a nearby town where the deed was acknowledged before a notary public, Sexson.
 
 
 7
 Sexson testified that Fred Winslett, Wise and Rozan were present in his office for the acknowledgment, but he did not recall whether Mrs. Winslett was present or not. The acknowledgment recites that she was. Mrs. Winslett testified she was not. Sexson said he thought the instrument was an oil and gas lease because Rozan had been taking oil and gas leases, several of which had been acknowledged before him.
 
 
 8
 Appellants would have us completely discredit Rozan's testimony because of certain discrepancies, and by characterizing him as a fast and shrewd trader, taking advantage of an unwary rancher and his wife while in a state of great confusion and anxiety. However, little of the evidence viewed in its entirety is free from irreconcilable conflicts and discrepancies, and this is not surprising considering the age of the transaction. Without specifically finding any part or version of the conflicting evidence deliberately false, the trial court did indicate that Mrs. Winslett may have been mistaken with respect to some of the material facts of the transaction. the court reasoned that even if Mrs. Winslett did sign the instrument without reading it, believing it to have been an oil and gas lease instead of a mineral deed, her negligence in that regard would certainly afford no grounds for setting it aside. And see Kruger v. Smith, 82 Colo. 380, 260 P. 97. Other circumstances, e. g., inadequacy of consideration, lateness of recording, and discrepancies between property descriptions on certain tax receipts and the description on the deed, tend to generate suspicion. But mere suspicions do not rise to the dignity of clear and convincing proof. See also Perkins v. Morgan, 210 Miss. 297, 49 So. 2d 383, 386. We agree with the trial court that the evidence of actionable fraud is "far from clear."
 
 
 9
 The question remains whether the possession and payment of taxes for seven years after the execution of the deed operated to give the Winsletts legal ownership of the minerals, notwithstanding the deed. Section 118-7-8 of the Colorado Revised Statutes (1953) provides that every person in actual possession of lands under color of title for seven consecutive years, and who during such time pays all taxes legally assessed, shall be adjudged the legal owner of such lands according to the purport of his or her paper title. Section 118-7-9 is a parallel provision applicable to vacant and unoccupied land. However, once the validity of the mineral deed is established, creating a separate mineral estate in Rozan, possession of the surface did not constitute possession of the minerals. See Calvat v. Juhan, 119 Colo. 561, 206 P.2d 600. And, payment of assessed taxes on the surface does not constitute payment of taxes on severed minerals unless a specific reference to the contrary is made of record. See Mitchell v. Espinosa, 125 Colo. 267, 243 P.2d 412. And, this was not done. For these reasons alone appellant's claim fails to meet the requirements of the statutes.
 
 
 10
 The judgment is affirmed.