CURRY *v.* LAKE SUPERIOR IRON CO.

1. TAXATION—MINES AND MINERALS—ESTATES—TENANTS IN COMMON—STATUTES.

The several estates constituting the fee to real property in mineral lands must be assessed together, regardless of the number of owners, and, hence, an assessment of mineral rights and the fee in one tax, against the land as a whole, is valid, it being immaterial whether the assessment has been made to one or all of the co-owners. 1 Comp. Laws 1915, §§ 3995-6, 4021.

2. SAME—TAX RATE—MINERAL LANDS.

As the duty to pay the tax rests as well upon the owner of the mineral rights as upon the holder of the fee, he may not buy in the tax title to the fee at tax sale and enforce the right to the entire property, though he may enforce contribution for the proportionate amount that the other tenant ought to have paid.

Appeal from Marquette; Flannigan, J. Submitted January 7, 1916. (Docket No. 71.) Decided March 30, 1916.

Bill by Solomon S. Curry against the Lake Superior Iron Company, a corporation, to set aside certain tax deeds procured by defendant. From a decree for complainant defendant appeals. Affirmed.

*Charles M. Humphrey,* for complainant.

*Frank A. Bell,* for defendant.

BROOKE, J. The learned circuit judge properly and concisely states the facts involved in this case as follows:

"The bill of complaint by which this suit was commenced was filed to set aside certain tax deeds of lot 32 of the plat of S. S. Curry's addition to the city of

Ishpeming, Marquette county. The material facts are admitted. The government title to the lot in question, except the ores and minerals therein, is in the complainant, and to the ores and minerals, is in the defendant, together with the right to enter on the lot and, by payment of the damages, if any, to the surface improvements occasioned thereby, to explore for, mine, dig, and carry away all such ores and minerals. While the government title so stood, the lot, by proper legal description, and without exception of the ores and minerals, was assessed to the complainant for taxes for upwards of 30 years. During all those years the records in the office of the register of deeds of Marquette county showed the ownership of the ores and minerals in the defendant, and the lot, except the ores and minerals, in the complainant. The taxes levied for the year 1899 and for the years 1902 to 1909, inclusive, were not paid, and for their nonpayment the lot was sold under tax proceedings in all respects regular on their face. At such tax sales the lot was bid in by the defendant, and subsequently the auditor general executed and delivered to it the tax deeds in question. After receiving the tax deeds, and in November, 1914, the defendant served on the complainant a notice in the accepted form, demanding payment within six months of the amounts bid at such sales, plus the usual penalty and fees. The complainant refused to pay the amounts demanded, but, on various occasions, offered to contribute his fair share of the amounts bid by the defendant and interest thereon. The defendant refusing to accept for a quitclaim of the complainant's surface estate, less than the amounts demanded by its notice, this suit was instituted."

Upon this state of facts the court below based a decree, holding that the tax each year was levied partly on the property of the complainant and partly on the property of the defendant; that by reason of this fact it was as much the duty of the defendant to pay the tax as it was that of the complainant; that in allowing taxes to become delinquent, the defendant, as well as the complainant, was in fault, and as a result the defendant could not obtain title to the property of the

complainant under a tax sale which resulted in part from its default. There is a further holding to the effect that where the owner of either estate pays the entire tax, the estates being separate though assessed together, the one who pays may pursue the owner of the other estate for contribution. From this decree the defendant appeals.

It is urged by the defendant that the question is an open one in this State, and that we are at liberty to adopt that rule which most nearly conforms to equity and good conscience, and, this being true, it is urged that the rule adopted in Minnesota should be followed. The case cited and relied upon by the defendant is *Washburn* v. *Gregory Co.*, 125 Minn. 491 (147 N. W. 706), decided in 1914. It involved a tax sale for the taxes of the year 1907. In the year 1905 the legislature of Minnesota passed an act (sec. 1, chap. 161, Laws of 1905 [Gen. St. 1913, § 1973]), as follows:

"That whenever any mineral, gas, coal, oil or other similar interests in real estate are owned separately and apart from and independently of the rights and interests owned in the surface of such real estate, such mineral, gas, coal, oil or other similar interests may be assessed and taxed separately from such surface rights and interests in said real estate and may be sold for taxes in the same manner and with the same effect as other interests in real estate are sold for taxes."

During all the years in which the lands in question in the case at bar were sold for taxes and conveyances made by the auditor general to the defendant, the law of this State bearing upon the question was as follows:

1 Comp. Laws, § 3824 (1 Comp. Laws 1915, § 3995): "That all property, real and personal, within the jurisdiction of this State, not expressly exempted, shall be subject to taxation."

1 Comp. Laws, § 3825 (1 Comp. Laws 1915, § 3996): "For the purpose of taxation, real property shall include all lands within the State, and all buildings and

fixtures thereon, and appurtenances thereto, except such as are expressly exempted by law."

1 Comp. Laws, § 3850 (1 Comp. Laws 1915, § 4021) : "The words 'cash value,' whenever used in this act, shall be held to mean the usual selling price at the place where the property to which the term is applied shall be at the time of assessment, being the price which could be obtained therefor at private sale, and not at forced or auction sale. In determining the value the assessor shall also consider the advantages and disadvantages of location, quality of soil, quantity and value of standing timber, water power and privileges, mines, minerals, quarries or other valuable deposits known to be available therein and their value."

The understanding of the law and the practice of the taxing officers of the State is set forth in the edition of the general tax law compiled by the auditor general's office for the year 1907. The note at page 43 of the compilation is as follows:

"In determining the true cash value of land, the value of standing timber should be included. *Fletcher* v. *Township of Alcona,* 72 Mich. 18 [40 N. W. 36]. The rule should be applied universally. If another than one holding the title to the land or possession thereof claims an interest in standing timber or other products or deposits on the land, the owner or person in possession must secure relief from the burden of taxation through mutual agreement between himself and the owner of such products or deposits; the assessor cannot consider such claims."

While the foregoing is of no binding force, it indicates the construction put upon the statute by the administrative officers of the State charged with the duty of levying and collecting taxes under the law. Under section 3850, *supra,* it would seem that no other method of assessment would be possible. In this State, therefore, we have this situation: All of the estates in any particular description must be assessed together, and it is unimportant whether the assessment is made to all or to but one of several owning interests or estates

therein. *Fletcher* v. *Post,* 104 Mich. 424 (62 N. W. 574) ; *Auditor General* v. *Keweenaw Ass'n,* 107 Mich. 405 (65 N. W. 288).

It must be presumed that the assessing officer, in obedience to the statutory mandate, each year included in the assessment against the complainant the value of the estate owned by the defendant in the description. This being true, it was no more the duty of the complainant to pay the entire tax, a portion of which was assessed against the defendant's estate, than it was the duty of the defendant to make such payment of the entire tax a portion of which was properly chargeable against complainant's interest. The owner of neither estate could protect his own property without paying an obligation properly chargeable against the owner of the other. This situation presents a theoretical difficulty, but in our opinion not a practical one. If the owners of the several estates in a particular description are unable to agree upon the proportionate share of the tax assessed that each should pay, either may pay the whole thereof and pursue the other for contribution. The right to secure contribution being assured, we are of opinion that agreement between the owners of the several estates will not be found to be difficult.

The question really presented by the case at bar is whether the ruling laid down in cases involving joint tenants and tenants in common should be extended to include cases such as the one now under consideration. While the statute (1 Comp. Laws, § 3829 [1 Comp. Laws 1915, § 4000]) permits undivided interests to be assessed to the separate owners, and section 3876 (1 Comp. Laws 1915, § 4049) permits one owning an undivided share or other part or parcel of real estate assessed in one description to pay on the part owned by him an amount having the same relation to the whole tax as the part on which the payment is

made has to the whole parcel, and while the statutes which relate to the assessment of mineral estates afford no means by which the owner thereof may have his interest segregated and assessed separately to himself, we are yet of the opinion that the reasoning which prevents one tenant in common from refusing to pay the taxes on the whole, and thereafter securing a tax title covering his cotenant's interest in the estate, is equally applicable to the situation presented by the case at bar. *Page* v. *Webster,* 8 Mich. 263 (77 Am. Dec. 446) ; *Cooley* v. *Waterman,* 16 Mich. 366. In the latter case it is said:

"The duty to pay springs *from ownership,* and not from the relation subsisting between two or more owners, and it is just as imperative in the case of a single owner as in that of tenants in common; and the default or violation of duty is as palpable in the one instance as in the other. Whether the estates of the parties are in the same parcel, or in severalty in two adjoining parcels, can make no difference in the principle. If the two parcels, separately owned by the parties, are so placed as to be *involved in the same default and the same sale,* as in this instance, the case must be governed by the rule applied under the like circumstances when the estates of the parties are in the *same* parcel."

See, also, *Dubois* v. *Campau,* 24 Mich. 360; *Sleight* v. *Roe,* 125 Mich. 585 (85 N. W. 10), and *Dahlem* v. *Abbott,* 146 Mich. 605 (110 N. W. 47).

It is perhaps worthy of note that the legislature in 1911, by the enactment of Act No. 51, Pub. Acts 1911, changed the settled policy of the State, by directing that all mineral rights in lands should, after the passage of said act, be assessed separately. After remaining in force for four years this act was repealed in 1915 by Act No. 119, Pub. Acts 1915. While all the taxes which are the subject of the controversy in the suit at bar were levied before the passage of the

act of 1911, and therefore the question is not affected by that legislation, the fact that the State has returned to its former method of assessment is significant. In the case at bar the respective interests of the complainant and defendant were fixed by stipulation, and the decree was made in accordance therewith.

The decree is affirmed.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, STEERE, and PERSON, JJ., concurred.