CURTIS D. YOUNG v. EMMA LOU YOUNG et al.; WALSH FIRE CLAY PRODUCTS COMPANY, Appellant.

Division One, March 16, 1925.

1. **PARTITION:** Surface and Subsurface Mineral Rights: Sale. Notwithstanding a separate and distinct mineral estate was created by the conveyance, by eight of the nine owners of a farm to a corporation, of the minerals lying within or under the tract, together with an easement right to enter upon the land and to construct and maintain pits, drains, roads and railroads thereon, such grant was made subject to the rights of the remaining cotenant who did not join in the conveyance or consent thereto, and the property and all estates therein continued to be one unit or subject-matter, and all the estates, including the surface and the mineral estate, are subject to partition, and may be sold as one whole by judgment of the court, and the interest in and right to the proceeds of the eight cotenants who did not convey the surface, and of the corporation which owns the mineral estate and easement conveyed by them, and

of the cotenant who did not join in the conveyance, may be determined in a partition suit.

2. ———: **Conveyance by Cotenant of Mineral Right Only.** As our laws do not limit partition proceedings to a division of the lands in kind, but permit them to be sold upon order of the court and the proceeds of the sale to be divided among the coparceners according to their respective interests and rights in the lands, a deed severing an undivided portion of the sub-surface or mineral estate from the whole estate, made by some of the cotenants without the consent or ratification of the others, is not void, even though the interest in the mineral estate of the non-consenting cotenant is worthless; but the court may decree the sale of the land as a whole without regard to the severance of the mineral estate, and determine what interest in the proceeds should be paid to the grantee in such a deed, and made a lien upon the interests of the grantors.

3. ———: ———: **Value.** Eight of the nine owners of a farm of 229 acres, of which 190 acres are in cultivation and the whole worth $70 per acre, for a consideration of $500, conveyed to a corporation the fire clay and minerals in the land, together with certain surface rights, such as the right to construct, maintain and use pits, shafts, drains, buildings, roads, tram ways, railroads, culverts, bridges and mining machinery. The grant had been made nine years before this partition suit was brought by the cotenant who did not join in or consent to the conveyance, who testified that his interest in the minerals was of no value at all, and that such easements if constructed would damage the surface and interfere with his use of it. No mining operations had ever been done on the land, no mining facilities constructed, no possession taken by the corporation, and it indicated no intention of doing so for years. *Held, first,* that the deed to the corporation was not void, and the grantee of the separate mineral estate must be placed *in statu quo* as nearly as equitable principles will permit; and, *second,* that, notwithstanding witnesses for the corporation testified its said separate estate was worth from $1,000 to $1,500, the judgment of the court fixing its value to be $500 and adjudging the same to be a lien upon the undivided interests in the proceeds of the sale of the lands as a whole of the eight cotenants who joined in the conveyance, was equitable.

Citations to Headnotes: 1, Mines and Mining, 27 Cyc. 682; Partition, 30 Cyc. 180, 230; Tenancy in Common, 38 Cyc. 109, 111; 2 and 3, Partition, 30 Cyc. 267, 273, 294.

Appeal from Lincoln Circuit Court.—*Hon. Edgar B. Woolfolk,* Judge.

AFFIRMED.

*Jourdan, Rassieur & Pierce* and *D. E. Killam* for appellant.

(1) The deed conveying to T. M. Pierce, his heirs and assigns "all mines and minerals" of every description whatsoever, including clay lying and being within or under a certain tract or parcel of land hereinafter described, created a separate and distinct estate and inheritance in eight-ninths of the mines and minerals in said land. Gordon v. Million, 248 Mo. 160; Gordon v. Park, 219 Mo. 600, 613; Manning v. Coal Company, 181 Mo. 377; Snoddy v. Bolen, 122 Mo. 487; Wardell v. Watson, 93 Mo. 107; Caldwell v. Fulton, 31 Pa. St. 475; Lillibridge v. Coal Company, 143 Pa. St. 293; Coal Company v. Mellon, 152 Pa. St. 286; Marvin v. Mining Company, 55 N. Y. 536; Caldwell v. Copeland, 37 Pa. St. 427. (2) Partition can only be made between cotenants. There can be no partition unless each of the parties thereto has an interest in all of the property sought to be partitioned. Forder v. Davis, 38 Mo. 107; Simmons v. MacAdaras, 6 Mo. App., 297; 20 R. C. L. p. 733, sec. 15; Middecoff v. Cronise, 155 Cal. 185; In re Prentis, 7 Ohio, 129; Harman v. Kelly, 14 Ohio, 502; Brownell v. Bradley, 16 Vt. 105; Snyder's Appeal, 36 Pa. St. 166. (3) Partition will not lie in this case, as the action has been brought, because the parties in interest are not cotenants in all of the lands or interest sought to be partitioned. Before partition will lie each of the parties must own an interest in all of the parts. Each party must own some part of both the surface estate and a mineral estate severed therefrom by grant as in this case. (4) The decree rendered herein is erroneous: (a) Because it ignores the separate and distinct estate of inheritance owned by the appellant and (b) because the decree, if any, should have partitioned the surface estate

among the Young heirs, and no decree should have been rendered adjudging the value of the mineral rights in the appellant and ordering same to be paid out of the proceeds of the sale of the land. This was clearly prejudicial to appellant's rights under the law.

*Ras Pearson* and *Creech & Penn* for respondent.

(1) The respondent owned an undivided one-ninth in the whole estate inherited from the estate of his father, and the deed made by his cotenants to Pierce could not operate to impair or prejudice his interest in said lands. Pellow v. Artic Iron Co., 164 Mich. 87, 47 L. R. A. (N. S.) 573; Gates v. Salmon, 35 Cal. 576, 95 Am. Dec. 139; Lee v. Fallensby, 83 Vt. 35, 138 Am. St. 1061; Good v. Coombs, 28 Tex. 34; Shepardson v. Rowland, 28 Wis. 108; Frederick v. Frederick, 218 Ill. 568; Great Falls Co. v. Worster, 15 N. H. 412; Kenaye v. Brown, 82 Miss. 607, 100 Am. St. 645; Worthington v. Staunton, 16 W. Va. 208; Southe v. Porter, 27 Me. 405; Frost v. Curtis, 172 Mass. 401; Ball v. Clark, 150 S. W. (Tex.) 359. (2) The court found the value of the mineral right in eight-ninths of the lands owned by appellant to be of the value of five hundred dollars, and ordered said sum to be paid appellant out of eight-ninths of the proceeds of such sale, which was the most fair and equitable order the court could have made under the circumstances.

SEDDON, C.—Suit for partition of 229 acres of land in Lincoln County, of which about 190 acres is under cultivation and the remainder consists of pasture and small timber. John K. Young, the common source of title, died intestate on April 7, 1902. He was survived by his widow, Sarah E. Young, and nine children, of which respondent, Curtis D. Young, is one. The widow, Sarah E. Young, died intestate during the year 1919. By quitclaim deed, dated January 17, 1906, duly acknowledged and recorded, three of the children of John K. Young conveyed their undivided interests in the land to their

mother, Sarah E. Young. By deed dated June 8, 1912, Sarah E. Young and six children of John K. Young (not including, however, the respondent and two of the children who had joined in the quitclaim deed to their mother, above referred to) for an expressed consideration of $500 did "grant, bargain and sell unto T. M. Pierce, party of the second part, his heirs and assigns, all mines and minerals of every description whatsoever, including clay, lying and being within or under a certain tract or parcel of land hereinafter described (being the same land involved in this suit), with the right to the said party of the second part, his heirs and assigns, of making, sinking, maintaining and using all such pits, shafts, drifts, levels, drains, watercourses and reservoirs, and, of constructing, erecting, maintaining and using all such railroads, tram roads and other roads, bridges, culverts, buildings, works, engines, machinery and conveyance whatsoever, and of doing such things, in, under, upon, through or over the said lands or any part thereof, as may be necessary or convenient for searching for, working, getting, preparing, carrying away and disposing of the said mines and minerals, including clay, to be gotten therefrom, or from other lands adjacent or in the neighborhood thereto."

On April 10, 1913, T. M. Pierce and his wife, by quitclaim deed, duly acknowledged and recorded, conveyed all their "right, title and interest" in said land unto Mississippi Glass Company, a corporation, the purpose of the conveyance, as expressed in the deed, being "to convey any right, title or interest that the said parties of the first part have in and to any of the above described property, of whatsoever nature or kind, including all mineral rights, or leases, and all easements, etc., to the party of the second part."

Respondent's petition names the heirs of John K. Young, T. M. Pierce, Mississippi Glass Company and a judgment creditor of H. K. Young, a son of John K. Young, as parties defendant. It seems to be conceded on the record that the corporate name of Mississippi Glass Company has been changed to Walsh Fire Clay Products

Company, and, by amendment to the petition, the last named corporation is made a defendant. The petition is in the usual form and alleges the respective interests of plaintiff and defendants in the land; that defendants T. M. Pierce, Mississippi Glass Company and its successor, the appellant herein, claim some undivided interest in the land and that respondent is not informed and does not know what interest is claimed by them and that partition cannot be made in kind without great prejudice to the owners of the land by reason of the number of the parties and diversity of their several interests, and of the location, nature and condition of said land. The prayer asks for partition according to the respective interests of the parties, and that the land be sold and the proceeds thereof divided among the parties according to such interests.

The answer of T. M. Pierce and Mississippi Glass Company, now Walsh Fire Clay Products Company, by change of name, pleads the conveyance or deed from Sarah E. Young and her six children, dated June 8, 1912, to T. M. Pierce, and the deed from T. M. Pierce and wife to Mississippi Glass Company, and that they own such interest in the land as is set out in said deeds. The answer also alleges that said defendants are not tenants in common with plaintiff nor with the other defendants in all of the lands or interests described in the petition, but that there are two separate estates or inheritances in the lands sought to be partitioned and, therefore, the lands are not partitionable in this action. Answers were filed by the other defendants, but they are not important as bearing on the issues here raised on appeal.

Trial of the cause was had by the court, without the aid of a jury. The relationship and respective interests of the heirs of John K. Young in the land are undisputed. Appellant introduced in evidence the deeds to T. M. Pierce and Mississippi Glass Company, together with the testimony of several witnesses tending to show the existence of fire clay in undetermined quantity upon or under the surface of the land in question; and that the

clay or sub-surface rights of the defendant heirs was purchased for $500 for future use by the Mississippi Glass Company, but the testimony shows that no work, development or mining operations have been done or carried out on the land by T. M. Pierce, Mississippi Glass Company, or its successor, the appellant herein. Appellant's manager testified: ''We have thousands of acres that we don't suppose we will use for fifty years.'' Several witnesses for appellant testified that the value of the clay or mineral rights in the land is $1,000 to $1,500, depending upon the quantity underlying the surface. At the conclusion of plaintiff's evidence, and at the close of all the evidence, the appellant filed declarations of law in the nature of demurrers to the evidence asking the court *nisi* to find for appellant, which declarations were overruled by the court.

Interlocutory judgment was entered by the court *nisi*, finding the allegations of the petition to be true and that plaintiff and defendants are seized as tenants in common, and otherwise, of the land; that respondent, Curtis D. Young, is entitled to a four twenty-sevenths interest in the surface of the land and a one-ninth interest in the clay or minerals underlying the surface; that the appellant, Walsh Fire Clay Products Company, as successor by name to Mississippi Glass Company, is entitled to an eight-ninths interest in and to all mines and minerals, including clay, lying and being within and under said land and finds the value of said interest to be $500, which is declared to be a first lien on the undivided interests of the other defendants in the land. The interlocutory judgment also finds and determines the respective undivided interests of the other defendants in and to the surface of said land and that partition in kind cannot be made without great prejudice to the owners and directs the sheriff of Lincoln County to sell the land at public vendue according to law, and report his acts to the court after the sale of the land. After unsuccessfully seeking a new trial, appellant has appealed to this court from the interlocutory judgment *nisi*.

Appellant's assignment of errors raises two questions: First, whether the trial court had jurisdiction under the facts in evidence to award partition of the land and determine the respective interests therein as against the appellant; and second, whether the court properly found and determined the value of the interest of appellant in said land. We will dispose of these questions in the order named.

I. Briefly stated, the first question to be decided by us on this appeal is: Will partition lie in this action under respondent's petition?

Appellant asserts that the deed from Sarah E. Young and her six children to T. M. Pierce created a
**Right to Partition.** separate and distinct estate and inheritance in eight-ninths of the mines and minerals in said land. That coal and other minerals in place are land and may be conveyed as such, and, when thus conveyed, constitute a separate and distinct estate and inheritance was decided by this court in Wardell v. Watson, 93 Mo. 107, and it is immaterial whether the mineral estate is created by express grant or by reservation. With the right to take minerals from the land, and as a corollary thereto, goes the right to enter and take possession, even as against the owner of the soil, and to hold such possession and use the surface, so far as is necessary, to carry on the mining operations without any express authority therefor. The principles announced in that case have been uniformly followed by this court in the following subsequent cases: Snoddy v. Bolen, 122 Mo. 479; Manning v. Coal Company, 181 Mo. 359; Gordon v. Park, 219 Mo. 600; and Gordon v. Million, 248 Mo. 155.

A separate and distinct mineral estate having been created by express grant from all of the Young heirs except respondent, the appellant contends that the parties to this suit are not co-tenants of the two separate estates (i. e., the surface estate and the mineral estate) sought to be partitioned and, hence, respondent's action will not lie. In other words, appellant urges that there can

307 Mo. Sup.—15.

be no partition under respondent's petition because he asks partition of the whole land, surface and sub-surface, whereas appellant has no fee title or interest in the surface estate and the Young heirs, other than respondent, have no interest in the mineral estate.

There is no question but that the general rule of law is that there can be no partition unless each of the parties thereto has an interest or moiety in all of the property or estate sought to be partitioned. The rule was early recognized in this State in Forder v. Davis, 38 Mo. 107. But like most general rules, the rule correctly stated and contended for by appellant has its exception. Respondent claims to fall within the exception. The exception to the general rule is stated in 20 R. C. L. 733, sec. 15, in this language: ''The exception to the rule that several parcels cannot be included in the one action unless all the owners are cotenants of all the property is one based on the universally accepted doctrine that one cotenant cannot by a conveyance of his interest in a portion of the property held in common prejudice the rights of his cotenants. The grantee or successor of such a cotenant simply steps into the shoes of his grantor, subject to all the rights of the other cotenants and their successors as to partition. For all purposes of partition, the whole property originally held in common by the cotenants, whether consisting of one or any number of parcels, continues to be a unit—the subject-matter of a single action, just as if no change in the ownership of any interest therein had occurred, and in such action the respective rights of all the parties interested, original cotenants and successors, may be determined. In such a case, a necessary party defendant may be a contenant only as to one of the parcels involved, and the fact that he is not interested in the other parcels is no ground of objection to the joinder in one action of the various parcels of land. In such a case there is but one cause of action stated, the partition of a single lot of real property originally held in common, and for all the purposes of the proceeding still so held.''

The precise proposition here involved, namely, whether an undivided portion of the sub-surface or mineral estate can be severed from the whole estate by one or more cotenants without the consent or ratification of another cotenant, seems to be one of first impression in this court. At least, counsel have cited no ruling or decision of this court bearing on the exact point, nor have we been able, upon our own research, to find any such decision.

Severing Deed of Some Cotenants without Consent of Others.

In Primm v. Walker, 38 Mo. 94, this court remarked that "the rule of law is well established, that one tenant in common cannot convey *by metes and bounds,* a distinct portion of the whole tract held in common with others, so as to prejudice his cotenants or their assignees, though it would bind him, and those holding under him, by way of estoppel, and that his deed would be inoperative and void as against them, and those holding under them, though it would be valid and effectual as against himself, and all those claiming under him. The principal reason is, that such deed breaks the unity of possession, and impairs the rights of the cotenants in respect to partition."

In Barnhart v. Campbell, 50 Mo. 597, ADAMS, J., speaking for this court, held that the statement in Primm v. Walker, supra, to the effect that a conveyance by one tenant in common of a portion of the common land, by metes and bounds, is void as to his cotenant, was *obiter dictum.* In the latter case, in discussing the rule, this court said: "In England, and in many of our sister States, the law seems to be well settled that such a conveyance is void as to the cotenant who does not consent. The only reason given is that it would render a partition of the land more difficult, and compel the cotenant to take smaller pieces and more of them to make up his share. But this reason is not applicable to our laws concerning partitions. Here the partition is not necessarily made in kind, as it is in other States and in England; but if partition in kind would prejudice the rights of the

parties, the land is required to be sold, and proceeds divided among the parties according to their respective rights. Each party has the chance to purchase such quantities as he may think proper."

In Freeman on Cotenancy and Partition (2 Ed.) sec. 198, the author says: "A conveyance of the minerals in a tract of land, reserving his interest in the land itself, made by a cotenant to a stranger, is regarded as void as against the cotenants of the grantor, 'because it is an attempt to create a new and distinct tenancy in common, between one cotenant and the others, in distinct parts of the common estate, which is contrary to the rules of law.' The reasons on which this rule is based are the same which are thought in many of the States to be sufficient to invalidate a conveyance made by either of the cotenants, and purporting to convey his interest in a part only of the lands of the cotenancy."

However, the weight of authority in other jurisdictions seems to be that such a conveyance is not void, but voidable only at the election of the objecting or non-consenting cotenant and, even in that event, the grantee named in such conveyance, or his assigns, must be placed *in statu quo* as nearly as a court of equity may do so. This rule is entirely in accord with our own ruling in Barnhart v. Campbell, supra.

While the exact proposition here involved does not appear to have been heretofore ruled by this court, nevertheless the point has been ruled in other jurisdictions. In Ball v. Clark, 150 Ky. 383, the Court of Appeals of Kentucky considered the identical proposition. There an ancestress had conveyed 100 acres of land in equal moieties to Andrew Ball and Polly Ann Ball, his wife. The wife died, intestate, leaving surviving children who inherited her interest, and while the title stood one-half in Andrew Ball and one-half in the heirs of his wife, Andrew conveyed an undivided one-half interest in the minerals under the surface, together with certain surface rights, to one Clark, trustee. Clark obtained a judgment of partition and an order of sale and division of the pro-

ceeds, from which judgment the defendant heirs of Polly
Ann Ball appealed. In ruling on the question, that
court said: "The deed to Clark, trustee, from Andrew
Ball, his vendor, conveyed the rights gained by the ven-
dee only of a one-half undivided moiety in and to such
mines, easements, and the other denominated rights in
the entire property. His cotenants in the other half of
the entire property owned not merely these minerals
and easements, but the fee in its entirety. The question,
therefore, is whether or not Andrew Ball, the vendor,
could execute to Clark, trustee, a deed of the character
named, conveying merely the minerals, appurtenances,
easements and small timber, and the rights generally
named in the conveyance in an undivided moiety in the
entire boundary, without prejudice to and without in-
jury to the vested rights of his cotenants in the entire
property from the heavens to the center of the earth.
The query has been adjudicated in other jurisdictions.
In Adam et al. v. Briggs Iron Co., 7 Cush. (Mass.) 361,
it was held that a grant by a cotenant attempting to sev-
er the ore from the general interest in the land was in-
effective as against the cotenants, because it was an at-
tempt to create a new and distinct tenancy in common be-
tween the one cotenant and the co-owner in distinct par-
tition of the common estate. Said the court: 'The
ground upon which this doctrine is established is, that
a tenant in common of an entire estate is entitled, on
partition, to have his property assigned in one entire
parcel, according to his aliquot part. The respective
cotenants may convey their shares to one or many gran-
tees, as they please, so it be of the entire estate; because,
whether there be one or many cotenants, each may still
have partition, which is inseparably incident to an es-
tate in common, and have it in one parcel and of like
kind and quality with the estate which he holds in com-
mon. I have a moiety; my cotenant has a moiety. He
may convey a quarter of the whole estate to one, an
eighth to another, a sixteenth to another, and so on in-
definitely, letting in other cotenants with me. But all

being seized of aliquot parts, in the same estate, and of like kind and quality, my right to partition is not disturbed by the number of cotenants. But if he could convey his aliquot part, in specified parcels of the estate, he might diminish the value of my right, if not render it worthless.'   . . .   The judgment decreed a sale of the entire minerals, privileges, easements, stone, timber under twelve inches in diameter, and the rights of removal, all as set out in detail in the deed supra, to Clark, trustee. It will be noted at once that under this sale not only would the rights of these infant cotenants in the minerals themselves be disposed of, but their surface rights would be seriously interfered with; for they would be forced *nolens volens* to part with their ownership of the timber under twelve inches in diameter, a property which they might be wholly unwilling to sell in their moiety of the entire property. The judgment as well would subject their one-half of the property upon partition of the surface, if it should ultimately be had, or their joint rights in the entire property, to all rights of ingress and egress, to the construction of tramways, railroads, and the like, and their maintenance over their surface properties—a condition so inequitable to them that the statement of it is sufficient to verify the reasoning of the cases supra, and to support our view that a partition or a sale of such joint properties in this distinct estate, carved out by the deed of Andrew Ball to Clark, trustee, is not to be tolerated."

In Benedict v. Torrent, 83 Mich. 181, two tenants in common of land conveyed their undivided interests in the timber on said land, thereby making the other tenants in common of the land cotenants with their grantee in said timber. Apropos the point involved, that court said: "The theory of the defendants is, that, by the conveyance by Mee and Seymour to them, a new tenancy in common was created, and Hart, Pease, Mee and Seymour were tenants in common of the land, and Hart and the defendants were made tenants in common of the timber. If this were so, then Mee and Seymour might

have sold and conveyed the gravel beds, deposits of clay, stone quarries, and deposits of ore, if any existed upon the lands, and thereby have created so many new tenacies in common, and their grantees could have forced a sale of each interest as against the other cotenants. Not only, therefore, may such a conveyance operate to the prejudice of those tenants in common who are not parties to it, but the inevitable result, as in this case, would be the substantial destruction of their landed estate.''

In Boston Franklinite Company v. Condit, 19 N. J. Eq. 394, it is held that ''one tenant in common cannot convey a particular part of the common property, or an easement in it, as the right to dig ores, to the prejudice of his cotenant. Such conveyance is void as to the cotenant, but good as against the grantor.''

The rule, or rather the exception to the general rule, announced in the foregoing cases seems to have been inferentially recognized, at least, by this court in Manning v. Coal Company, 181 Mo. 1. c. 376, wherein BURGESS, J., speaking for this court, said: ''Plaintiff claims, however, that these decisions are not applicable, for the reason that if Stephen Gipson did sell to Manning he must have sold the whole undivided estate, as he had no right to divide the estate while in Manning's possession and sell the coal to another. *That he could not have done so without the consent or acquiescence of Manning may be conceded.''*

We find the reasoning of the foregoing cases to be sound and to be particularly applicable to the instant case. There is no evidence in the record before us indicating that respondent consented to or acquiesced in the severance of the mineral estate from the surface estate. Not only did the deed to T. M. Pierce grant or convey the clay or mineral rights in the land, but it also granted certain rights in the surface thereof, such as the several rights to construct, erect, maintain and use railroads, tram roads, bridges, culverts, buildings, works, engines and machinery thereon, and of doing all such

things upon, through or over the surface as may be necessary or convenient. The testimony shows that approximately 190 of the total 229 acres is under cultivation and that the land in its present state of cultivation is worth, according to respondent's judgment, $70 an acre. Respondent testified that the severance of the mineral or clay estate would cause damage to his surface estate in the land, and that he considered his one-ninth interest in the mineral or clay estate as wholly valueless and worth nothing. We find that respondent's petition states a good cause of action in partition and that the court *nisi,* by reason of the diversity of parties and interests, properly ordered and decreed a sale of the whole land without regard to the severance of the clay or mineral estate therein.

II. Did the court *nisi* equitably find and determine the value of appellant's interest in the land? As we have remarked, the rule adopted by most foreign jurisdictions is that, where a conveyance is made by one cotenant of a separate and distinct parcel of the whole common holding without the consent or acquiescence of the other cotenants, the conveyance is not void and the grantee of the separate parcel conveyed must be placed *in statu quo* as nearly as equitable principles will permit. The foregoing rule is in consonance with the ruling of this court in Barnhart v. Campbell, supra.

In Pellow v. Arctic Iron Company, 164 Mich. 87, the rule is announced in these words: "A cotenant may sell and convey the whole or any aliquot part of his undivided interest in the whole property, but he cannot, without the consent of the other, convey an undivided interest in any specific parcel of the common holding, nor can he, without such consent or subsequent ratification by his cotenant, convey by metes and bounds a specific parcel of the common estate and thus sever it so as to bind the non-granting cotenant. . . . But where one cotenant assumes to convey in fee, by metes and

bounds, a parcel of the common estate (as Harvey did in the case at bar), his deed is not void, but it creates equities in his grantee which will be protected and enforced so far as is possible without injury to the non-granting cotenant.''

While appellant's witnesses testified that its interest in the mineral or sub-surface estate in the land is worth from $1,000 to $1,500, they also testified that the value of that interest depends upon the quantity of clay or minerals underlying the surface. No witness attempted to fix the quantity of clay or minerals upon which, necessarily, the value of appellant's interest depends. It is undisputed upon the record that no work or mining operations have been done by appellant upon the land and it therefore follows that appellant has expended no moneys in the development of its clay or mineral rights in the land in question. The appellant had owned an undivided eight-ninths interest in the clay or minerals for more than nine years before the trial of this action, and yet had neither reduced them to possession nor made any effort to develop or use the rights it had purchased, and, furthermore, it indicated no intention of doing so for years hence. We think that, upon the whole record, the action of the trial court in fixing and determining the value of appellant's interest at the sum of $500, the consideration paid therefor, and in adjudging the same to be a lien upon defendants' undivided interests in the surface estate, was equitable in the premises and the finding and interlocutory judgment of the court *nisi* is free from error.

The interlocutory judgment *nisi* is accordingly affirmed and the cause is remanded to the circuit court in order that the interlocutory judgment may be carried out and final judgment entered therein. *Lindsay, C.,* concurs.

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of the court. All of the judges concur, except *Atwood, J.,* not sitting.