Docia DORMAN et al., Respondents,

v.

Mary MINNICH et al., Defendants,
J. W. Maples et al., Appellants.

No. 47198.

Supreme Court of Missouri,

En Banc.

June 13, 1960.

Rehearing Denied July 11, 1960.

Geo. F. Addison, L. Clark McNeill, Salem, for defendants-appellants.

Lay & Ichord, Houston, for respondents.

C. Powell Fordyce, Harold A. Thomas, Jr., Fordyce, Mayne, Martman, Renard & Stribling, St. Louis, for amicus curiae.

DALTON, Judge.

This cause comes to the writer on reassignment. It is an action to quiet and determine title to 80 acres of described real estate in Texas County; however, title to only 20 acres is involved in this appeal. Some fifty plaintiffs claimed to own the mineral rights in this particularly described 20 acres, some of them claiming as little as a $\frac{12}{8584}$ undivided fractional interest therein. While the petition named a number of defendants, only J. W. Maples and his wife Minnie D. Maples and Marcus Flatt appeared and defended the action. They claimed the fee simple ownership of both surface and sub-surface rights in the mentioned 20 acres as the subsequent grantees of the grantee in a tax deed dated September 3, 1952. They have appealed from the judgment which quieted the title to the mineral rights in this 20 acres in the plaintiffs.

Count One of the petition, which described this 20 acres and other real estate, stated no facts to invoke the jurisdiction of a court of equity and the cause was tried to the court without the aid of a jury. We shall review the record in accordance with the provisions of Sec. 510.-310 RSMo 1949, V.A.M.S. Much of the evidence is documentary or is a matter of record and there is little dispute, if any, as to the facts developed in oral testimony. The principal issue concerns the legal effect of substantially admitted facts. The controversy is solely with reference to the title to the mineral interests or estate in the mentioned 20 acres, since it is conceded that appellants own the surface fee.

John D. Pharris is the common source of title. His heirs and the heirs of Frederic Dorman, his grantee, and the grantees of certain heirs were plaintiffs below and are respondents here. For convenience we shall adopt with some modification portions of an opinion prepared by one of our Commissioners.

On December 14, 1880, John D. Pharris and his wife conveyed to Frederic Dorman the S ½ of SE ¼ of Sec. 18 in Twp. 33N, R8W, containing 80 acres more or less, by a deed containing this clause:

> "Hereby reserving to ourselves the said first parties our heirs executors administrators and assigns the undivided one half interest in and to all minerals of any kind whatsoever in and upon said lands with the absolute right and privilege to go in and upon said land and engage in min*e*ing for any such minerals at any and all times that to us may seem proper*ty*."

That deed was recorded on February 16, 1885. The date of Mr. Pharris' subsequent death does not appear in the record, but he was survived by eight children, and one of his grandsons appeared as a witness in the case. Frederic Dorman died intestate

on November 27, 1887. On October 7, 1932, the heirs of Frederic Dorman, in order to effect a "family settlement" of certain of their interests and to reserve their mineral rights in the 80 acres, conveyed it to one Barnes, a straw party, by a warranty deed containing this reservation:

"Hereby reserving to ourselves, the said First Parties, our heirs, executors, administrators and assigns, all the Monerals of any kind whatsoever in and upon said land; with the absolute right and privilege to go in an upon said land engage in mining for any such minerals at any and all times that to us may seem proper."

That deed was recorded on June 5, 1933. On March 11, 1933, Barnes and his wife executed their four separate quitclaim deeds, each of which conveyed back to named Dorman heirs 20 acres of the original 80 acres. As stated, appellants claim ownership of only one 20-acre tract, to-wit: the W ½ of the SW ¼ of the SE ¼ of Sec. 18. Barnes conveyed this tract to Lucy May Mobley and Theodore Mobley, her husband. That deed was recorded on March 14, 1934. There was no mention in that or any of the other three quitclaim deeds of the mineral estate. The Mobleys resided in Big Horn Basin, Wyoming. Mrs. Mobley, who was one of the four Dorman heirs, died intestate September 15, 1943, survived by her eight children, each of whom apparently would have inherited a ¼₄ interest in the mineral rights in this 20-acre tract, the remaining fractional interests in the mineral rights being owned by the Pharris heirs and the other Dorman heirs.

The state and county taxes for the years 1947, 1948 and 1949, appeared on the assessment books of Sherrill Township, Texas County, as taxes against the W ½ of the SW ¼ of the SE ¼ of Sec. 18, Twp. 33, R 8. The assessment was in the name of Theodore Mobley. No other assessment was shown as to the 20 acres. Theodore Mobley had not returned any assessment list for 1947, 1948 or 1949, nor had any assessment list been returned by any Pharris or Dorman heir claiming any interest or estate in this tract. The township assessor made the assessments himself and fixed the valuation of the tract for each year at $50. The assessor did not purport to separately assess the surface fee and the mineral estate. He had not received any claim respecting a separate mineral estate for assessment. The tract, assessed as indicated, was returned delinquent for the said years and, subsequently, it was advertised and sold, on August 28, 1950, to R. B. Wilson for $20. On September 3, 1952, Wilson received a tax deed which described the land as the "West one half of Southwest Quarter of Southeast quarter, Section 18, Township 33, Range 8, containing twenty acres, more or less." There was no specific reference to either the surface or the mineral estate in this deed, which was in the usual form. On December 9, 1953, Wilson and his wife conveyed the same 20 acres under the same description to J. W. Maples and his wife Minnie for a recited consideration of $75. Maples and wife conveyed an undivided one-half interest to Marcus Flatt on December 2, 1955, for a recited consideration of $50.

Before proceeding farther, we shall briefly review the foregoing facts and draw certain conclusions. In the instant case the 1880 deed from Pharris to Dorman and the 1932 deed from the Dorman heirs to Barnes were the deeds which reserved the separate mineral estate and both of those deeds were on record. The 1880 deed reserved in Pharris one-half the mineral estate in the 80 acres so that his grantee, Dorman, received title to the entire surface estate and title to one-half the mineral estate. The Dorman heirs conveyed the 80 acres to Barnes but reserved the mineral estate so that Barnes received title to the surface only. By reason of the mentioned reservations in the 1880 and 1932 deeds there was of course a severance of ownership of the surface fee from the mineral estate and the owners

of the respective estates were not co-tenants. See Wardell v. Watson, 93 Mo. 107, 5 S.W. 605; Snoddy v. Bolen, 122 Mo. 479, 24 S.W. 142, 25 S.W. 932, 24 L.R.A. 507; Young v. Young, 307 Mo. 218, 270 S.W. 653, 654(1), 39 A.L.R. 734; Tiffany on Real Property, 3d Ed., Sec. 1158, p. 469; American Law of Property, Vol. II, p. 100, Sec. 6.22; 84 C.J.S. Taxation § 68, p. 173. Thereafter, one-half of the mineral estate was in the Pharris heirs and one-half in the Dorman heirs. Barnes conveyed 20 acres back to each group of the Dorman heirs by quitclaim deed and, of course, conveyed only the right, title, and interest which he had. That title or interest did not include any interest in or title to any part of the mineral estate. The fact that the quitclaim deeds from Barnes did not state that he was not conveying a mineral estate to which he had no title and which he could not have lawfully conveyed should not have concealed the true status of the mineral estate insofar as the land records of the county are concerned. The deeds creating the mineral estate had been recorded prior to the Barnes quitclaim deeds and thus the quitclaim deeds did not have any effect on the separate mineral estate which was then in existence. We therefore conclude that, at the times the 1947, 1948 and 1949 assessments for taxes were made, the title in fee simple to the 20 acres here in question, except for the minerals, stood in the name of Lucy May Mobley and Theodore Mobley, her husband, but, as noted, Lucy May Mobley had died in 1943 owning a ⅛ interest in the mineral rights. While the title to the mineral estate in 1947, 1948 and 1949 was in the Pharris and Dorman heirs, including the heirs of Lucy May Mobley, the names of the numerous Pharris and Dorman heirs, who owned the undivided fractional interests in the mineral estate, could not have been ascertained from the land records of Texas County.

The first question presented is whether the mentioned tax deed conveyed the minerals and the right to mine them as reserved in the Pharris and Dorman deeds, as well as the surface rights in the 20 acres. The answer to that question depends upon the construction to be placed upon the applicable statutes of this state. No question is presented concerning the validity of the tax deed. Its validity is admitted. The question is, what interest did it convey? The trial court did not hold that the tax title was void, but held that the appellants had no title, estate or interest to the minerals in the described 20 acres.

Appellants contend that the court erred because "under the law the tax deed in this case must stand as conveying the fee simple title because a tax deed creates and constitutes a new title, an independent grant from a sovereign authority and is not derivative." Appellants cite State ex rel. Buder v. Hughes, 350 Mo. 547, 166 S.W.2d 516, 518, and other cases.

Respondents say the only question is, "Did the tax deed on September 3, 1952, divest plaintiffs of their interest in the mineral estate?" They insist that "the tax deed was only operative to convey the surface rights to the said W½ of the SW¼ of the SE¼." Respondents' theory is that by reason of the reservations of minerals in the 1880 and 1932 deeds there was a severance of the mineral estate from the surface fee; that the mineral estate was not thereafter assessed for taxation; that the 1947–1949 assessments covered the surface fee only; and that only that estate or interest passed by the treasurer and ex officio collector's tax deed. Respondents rely particularly on the case of Kernkamp v. Wellsville Fire Brick Co., 237 Mo.App. 457, 170 S.W.2d 692 decided by the St. Louis Court of Appeals in 1943. Respondents also cite Mitchell v. Espinosa, 125 Colo. 267, 243 P.2d 412, 417, where the court said: "As already stated, our statute requires separate assessment where separate estates are owned by different persons"; and Milliron Oil Co. v. Connaghan, 76 Wyo. 330, 302 P.2d 256, 259, where the court said: "It should be kept in mind that under the

provisions of § 32–1001, Wyoming Compiled Statutes, 1945, the mineral interest on or under lands is only made subject to assessment when and as such minerals are produced. Hence, any such property in minerals is not made subject to assessment for taxation, until their actual production."

In the Kernkamp case, the plaintiff had brought an action for conversion of fire clay and for damages to the land from which the fire clay was mined. Title to real estate was not directly involved, if it had been that court would have been without jurisdiction to decide the issue. The court held that, under the facts in evidence, the plaintiff, who claimed the land under a tax deed, had no title to the fire clay, because there had been a severance of the ownership of the fire clay and [237 Mo.App. 457, 170 S.W.2d 693] "there never was an assessment of the mineral estate upon which a sale for delinquent taxes could have been predicated." The court reviewed certain statutes and said: "It is clear, under these statutes, that the mineral estate in this land was subject to taxation separate and apart from the surface estate. It is also clear that it was the duty of the assessor to assess the two estates separately, although his failure to do so would not have invalidated a sale made by the state to foreclose its tax lien." 170 S.W.2d loc. cit. 694. Nevertheless the court held that an "assessment, designated on the assessor's list by its governmental description, and made in the name of Noah Bethel, the owner of the remainder estate" (the surface rights) did not include the sub-surface rights. We do not agree with the conclusions there reached with reference to the validity of the assessment and we are unwilling to follow that case in view of the statutory law of this state as applicable to the facts of the present case. A review of the statutes applicable to our facts is required.

Texas county has township organization and the 20 acres in question is located in Sherrill Township. Sec. 137.435 RSMo 1949, V.A.M.S., applicable to township organization counties (all references are to that revision unless otherwise stated) provides: "All real property shall be assessed in the township in which the same is situated, with the owner's name thereof, if known; if the owner's name is not known, then it shall be assessed as nonresident." Sec. 137.430 provides that: "All personal property shall be assessed annually; real property shall be assessed as provided by law." Sec. 137.440 provides that: "The assessor * * * shall * * * proceed to take a list of the taxable property of his township and assess the value thereof in accordance with the provisions of the general laws of this state in relation to the assessment of real and tangible personal property by county assessors, in all things pertaining to the discharging of his official duties, except when the same may be inconsistent with the provisions of this chapter * * *."

Examining "the provisions of the general laws of this state in relation to the assessment" of real estate we find that Sec. 137.-010(2) defines real property as: "(2) 'Real property' includes land itself, whether laid out in town lots or otherwise, and all growing crops, buildings, structures, improvements and fixtures of whatever kind thereon, and all rights and privileges belonging or appertaining thereto * * *." (This definition certainly covers any minerals under the surface of the ground and any rights with reference to going upon the land to mine minerals.)

Sec. 137.015 provides for the classification of property for tax purposes and "class one" is "real property."

Sec. 137.080 provides for the annual assessment of "real estate."

Sec. 137.075 provides that: "Every person owning or holding real property or tangible personal property on the first day of January including all such property purchased on that day, shall be liable for taxes thereon during the same calendar year."

Sec. 137.085(2) provides that: "Real property shall in all cases be liable for the

taxes thereon, and a lien is hereby vested in favor of the state on all real property for all taxes thereon, which lien shall accrue and become a fixed encumbrance as soon as the amount of the taxes is determined by assessment and levy, and said lien shall be enforced as provided by law; said lien shall continue to be enforced until all taxes, forfeitures, back taxes and costs shall be fully paid or the land sold or released as provided by law."

Sec. 137.115 provides for the assessor requiring resident owners to make and deliver lists " * * * of all taxable real and tangible personal property in the county owned by such person * * *." And see Sec. 137.125.

Sec. 137.120 provides what the tax assessment lists shall contain "(1) A list of all the real estate and its value."

Sec. 137.130 provides: "Whenever there shall be any taxable property in any county, and from any cause no list thereof shall be given to the assessor in proper time and manner, the assessor shall himself make out the list, on his own view, or on the best information he can obtain * * *."

No list was furnished by anybody having any interest in the 20 acres in question for the years mentioned, 1947, 1948 and 1949. Many owners of fractional interests in the mineral rights were apparently residents of Texas County and it was their duty to list their property for taxation. They did not do so, nor did any nonresident owner of mineral or surface rights return an assessment list.

Sec. 137.165 provides for the assessment of any omitted "tract of land or town lot." (Not of any omitted fractional interest or estate therein.)

We have seen that the township assessor of Sherrill Township, for each of the mentioned years, when the described property was not listed by any person returning an assessment list, assessed it, as stated, by its legal description, as follows:

| To Whom Assessed | Quantity Acres | Description | Section | Township | Range | Valuation |
|---|---|---|---|---|---|---|
| Theo. Mobley | 20 | W–½ SW–¼ SE–¼ | 18 | 33 | 8 | $50.00 |

For the reasons hereinafter stated, we think this was a valid assessment of the fee simple title of the described real estate. The assessment was not limited to either mineral rights or surface rights, but prima facie covered every interest or estate therein. See Curry v. Lake Superior Iron Co., 190 Mich. 445, 157 N.W. 19, 20, decided prior to the adoption of a statute requiring the separate assessment of mineral rights; 84 C.J.S. Taxation § 462, p. 895. It was a general assessment of the property by its legal description and a valid assessment of the entire title to the described real estate regardless of how many people had interests or estates therein and although their names were not listed on the assessment books. While not decisive here, the real estate was assessed in the name of the surviving grantee in the last unrestricted conveyance of record and in the name of the conceded owner of the surface rights.

Sec. 137.170 provides: "Each tract of land or lot shall be chargeable with its own taxes, no matter who is the owner, nor in whose name it is or was assessed. The assessment of land or lots in numerical order, or by plats and a land list in alphabetical order, as provided in this chapter, shall be deemed and taken in all courts and places to impart notice to the owner or owners thereof, whoever or whatever they may be, that it is assessed and liable to be sold for taxes, interest and costs chargeable thereon; and no error or omission in regard to the name of any person, with reference to any tract of land or lot, shall in

**506**

anywise impare the validity of the assessment thereof for taxes." And see Secs. 137.265, 140.500, 140.510 and 140.520.

The statutes with reference to the assessment of real estate were fully reviewed in the case of State v. Gomer, 340 Mo. 107, 101 S.W.2d 57 and, after such review, the conclusion was reached (loc. cit. 63) that the assessor is "required to put all real estate on his book from his own investigation of former tax books, maps, plats, records, and other necessary information. Real estate cannot be concealed, but can all be found on a map. In fact, it can be more completely and accurately accounted for by use of a map than by inquiring only among property owners. An assessor can put all taxable real estate on his books, whether he can find out who owns it or not. *That is all that is essential to a valid assessment of it,* although it is his duty to get information as to description, ownership and value of land, when he takes lists of personal property, and to keep his book corrected to show the correct description and true ownership of land, from such information." (Italics ours.) And see Evans v. Brussel, Mo.Sup., 330 S.W.2d 788; State ex rel. McKee v. Clements, 281 Mo. 195, 219 S.W. 900.

It is true, as respondents contend, most authorities hold that, after the severance of the surface fee from the mineral estate, each estate is taxable as real estate. See Summers, The Law of Oil & Gas, Permanent Ed., Vol. 4, p. 204, Sec. 784; Cooley on Taxation, 4th Ed., Vol. 2, p. 1225, Sec. 566. But whether the mineral estate may be separately taxed as real estate is not our problem since there was no separate assessment of either of the severed estates. The assessment here was by the legal description of the 20-acre tract and prima facie covered both estates. In such a case even though there had been a prior severance of the mineral estate from the surface fee and even though the owner of one of such severed estates could not maintain partition against the other, nevertheless it has been held that neither one can permit the property to sell for taxes against the fee simple estate, buy in at tax sale and set up a tax title to the exclusion of the owner of the other severed estate. See Curry v. Lake Superior Iron Company, supra, 157 N.W. 19; Panhandle Co-Operative Royalty Co. v. Ferguson, 204 Okl. 303, 229 P.2d 594. Further, in many states the separate assessment of such separate estates is expressly required by statute. Summers, The Law of Oil & Gas, Permanent Ed., Vol. 4, p. 204, Sec. 784 et seq., and 1959 Cumulative Pocket Parts.

Further, we find no statute of this state that requires the separate assessment of the surface fee from the mineral estate where there has been a severance, nor should such separate assessment be required by the court where no such severed estates or interests have been returned by anyone for assessment. However, Sec. 139.090 does provide that an owner may make payment of taxes to the collector "on the undivided share of real estate" and also provides for the payment of taxes on real estate "in whole or in part." Secs. 140.390 and 140.400 provide for the redemption of undivided shares or a specific part of any land sold for taxes and provide the method of determining the amount payable. Respondents took no action under these sections to protect their property rights.

Further, a review of the many provisions of Chapter 137 with reference to the assessment and levy of taxes on real estate clearly shows that the legislative plan for the assessment and collection of taxes is based upon surface descriptions of real estate. For example: Sec. 137.185 provides for the assessment of real estate where subdivided into less than 1/16 of a section: "* * * in such manner that such parcels cannot be described in the usual manner of describing lands in accordance with the surveys made by the general government * * *." Secs. 137.195, 137.200, 137.205 and 137.210 provide for county courts procuring plats and maps and for the use of such by the assessor in making assessments and discovering

omitted property. And see Secs. 137.215, 137.225, 137.230, 137.270 and 140.170.

When we consider the statutory plan for assessment and collection of taxes as evidenced by the foregoing statutes, we must and do hold that the assessments in question here covered the fee simple title and included the mineral estate and all interests now claimed by the plaintiffs-respondents as heirs of J. D. Pharris or Frederic Dorman, or as the grantees of any of their heirs, as well as the surface fee in the described real estate.

█ Further, we find nothing in the statutory plan which evidences an intention that a township assessor should be a skilled title examiner or that he should examine the land records back to 1880, or 1932, to ascertain reservations contained in deeds, and the names and interest of the numerous heirs of deceased persons, resident or nonresident, or to determine the exact extent of their interest or estates in any specifically described property and assess it accordingly. Nor were the names of these numerous individuals, or the extent of their interests or estates required to be determined either for a valid assessment or a valid sale of the fee simple title to the described real estate. State ex rel. McKee v. Clements, supra, 219 S.W. 900, 901; State v. Gomer, supra; Sec. 137.170.

The Kernkamp case held that [237 Mo. App. 457, 170 S.W.2d 694], "It was the assessor's duty * * * *to ascertain the exact status of titles,* so as to comply with the mandate of the statute requiring him *to list all property in the name of the owners thereof.*" (Italics ours.) We do not so construe the statutes, nor should the validity of assessment for taxation be determined by such technical and impractical construction of the applicable statutes. The Kernkamp case is overruled. Secs. 137.130, 137.170.

While the validity of the tax sale is admitted insofar as applicable to the surface fee, we nevertheless note that as to tax sales Sec. 140.170 provides for the publication of the "list of delinquent lands and lots" and further requires: "2. In addition to the names of all record owners *or the names of all owners appearing on the land tax book* it shall only be necessary in the printed and published list to state in the aggregate the amount of taxes, penalty, interest and cost due thereon, each year separately stated, *and the land therein described shall be described in forty acre tracts or other legal subdivision, and the lots shall be described by number, block, addition, etc.;* provided, however, that if a part or parts of any forty acre tract or other legal subdivision or lot *is assessed on the tax books to two or more parties as owners thereof, then,* as to such land or lots, such list shall be so prepared and separated." (Italics ours.) Sec. 13, Art. 10 of the Constitution of 1945, V.A.M.S. also provides that, "No real property shall be sold for state, county or city taxes without judicial proceedings, unless the notice of sale shall contain the names of all record owners thereof, *or the names of all owners appearing on the land tax book,* and all other information required by law." (Italics ours.)

In view of the conclusions reached as to the applicable law, the judgment, insofar as it applies to the described 20 acres, is reversed and the cause remanded with directions to enter a new judgment in conformity to the law as stated herein.

PER CURIAM.

The foregoing opinion by DALTON, Judge, has been adopted as the opinion of the Court en banc.

All concur.

Supplemental Opinion.

PER CURIAM.

No new briefs have been filed, nor new issues presented by the parties to this appeal since the cause was transferred from

Division No. 1 to Court en banc, but permission was granted for the American Zinc, Lead and Smelting Company to file a brief as amicus curiae.

In considering the mentioned brief we must keep in mind that plaintiffs claimed ownership of only the mineral rights in the described real estate. The petition, however, recites that on August 28, 1950, *"the surface rights"* to the described real estate were sold for delinquent taxes to R. B. Wilson; that a tax deed was executed and delivered to R. B. Wilson on September 3, 1952 conveying the surface rights to him; that he subsequently conveyed to defendants (appellants); and that defendants now claim the mineral rights and their claims are adverse and prejudicial to plaintiffs. Defendants (appellants) answered and claimed the fee-simple ownership of the property in question and denied generally and specifically each and every allegation contained in the petition which was inconsistent with their fee-simple ownership of the land described, both surface and subsurface.

■ Amicus curiae's *theory* is that, in any case where there has been a separation of the surface fee from the mineral estate, the assessment of the property by such a description as is ordinarily used in deeds and conveyances to convey the fee simple estate is an assessment of only the *surface estate*; and that to hold that such description for the purpose of assessment includes the alleged "unmentioned mineral estate, too," is a violation of the constitutional guarantee of due process of law. Counsel insists the governmental description "made no mention of the mineral estate." It could be equally said that it did not specifically mention the *surface estate,* —since the assessment was by the usual legal description used in deeds and conveyances to cover the fee-simple interest in described real estate.

Counsel also argues that the legal or governmental description with Motley's name covered only "an actually existing separate estate," but Section 137.170 RSMo 1949, V.A.M.S. says the assessment of land or lots by governmental description, as provided in that chapter, is a valid assessment; and that "no error or omission in regard to the name of any person, with reference to any tract of land or lot, shall in anywise impair the validity of the assessment thereof for taxes."

What was *the interest assessed?* It is admitted that the proceedings for sale were regular; that no limitation of interest appears; and that whatever interest was assessed was sold. Respondents say: "The respondents do not seek to attack or declare the tax deed void."

In the brief of amicus curiae emphasis is placed upon that part of the Kernkamp case opinion, 170 S.W.2d 692, 694(3) where the court said:

"It was the assessor's duty to make a correct list of all taxable property in his county, and to ascertain the *exact status of titles,* so as to comply with the mandate of the statute requiring him to list all property *in the name of the owners thereof."* (Italics ours.)

Counsel overlooks the fact that the Kernkamp holding was directly in conflict with the opinion of this Court in the Gomer case (101 S.W.2d 57, 63) where the Court said: "An assessor can put all taxable real estate on his books, whether he can find out who owns it or not. That is all that is essential to a valid assessment of it * * *."

Further, even the opinion in the Kernkamp case, in effect, recognized the existing law when it stated therein that, "It is also clear that it was the duty of the assessor to assess the two estates separately, although his failure to do so would not have invalidated a sale made by the state to foreclose its tax lien." 170 S.W.2d 692, 694(2).

■ Counsel also argues that it would now be a denial of "due process of law" for this Court to reassert the law as declared in the Gomer case. We find no merit

in this contention, because the prior decision of this Court was controlling. The Court of Appeals could not overrule a prior opinion of this Court.

The third subdivision of the brief filed by amicus curiae again insists that the basic premise of the Kernkamp case is correct in that "the statutes *require* the assessor to make a *correct* list of the taxable property in the name of the *owner* thereof." Aside from the fact that this construction conflicts with the Gomer case, the impracticability of such a construction appears from the facts in this case. John D. Pharris, the common source of title, made a deed in 1880 conveying this property in part, but *reserving* a one-half interest in the minerals. No index in the recorder's office would show such a *reservation* and such reservation could only be discovered by reading the deed. It is admitted that John D. Pharris died many years ago leaving eight children and no subsequent conveyances of this reserved one-half interest in the mineral estate were ever recorded. In fact, the plaintiffs in this case were not able to definitely ascertain the names of all of the Pharris heirs when they brought this suit. To require a township assessor to check the land records of his county for such *reservations of interest* and, thereafter, determine heirship and separately assess the owners of the mineral estate and make the assessment in the name of the owners of the estate is to destroy the assessment statute and free the property from taxation.

The mentioned brief further seeks to raise constitutional questions as to *notice and due process* concerning *the sale,* questions not raised in the pleadings or presented by the briefs filed by the parties. Respondents in their brief here attacked the tax sale solely on the ground that there was *no valid assessment* of the mineral estate where the assessment is by its unrestricted governmental legal description with only the name of the surviving grantee in the last unrestricted deed of record. This named party owned the surface fee and, apparently, had an interest in a fractional portion of the mineral estate, since he and eight children survived his wife who owned a one-eighth interest in the minerals. Under Section 137.170 error in the name of the owner was unimportant for *assessment purposes* and that is the only issue presented by the claimants to the mineral estate. The opinion does not rule the issue of the sufficiency of notice as to the *sale* but calls attention to the statutory and constitutional provisions. No constitutional questions have been raised by the parties to the cause. No question of "measuring one man's tax by another man's property" is presented for decision, although the opinion points out that under existing statutes the owner of any interest in the real estate assessed may pay the taxes on his own interest in the property, or even after sale he may, within the time provided, redeem his interest by paying his part of the tax.