WALTER KERNKAMP AND MARY KERNKAMP, RESPONDENTS, v. WELLS-VILLE FIRE BRICK COMPANY, A CORPORATION, (DEFENDANT) APPELLANT. LEO ABELE AND LES BAUR, DEFENDANTS.—170 S. W. (2d) 692.

St. Louis Court of Appeals. Opinion filed May 4, 1943.

Respondent's Motion for a Rehearing denied May 21, 1943.

458

*S. S. Nowlin* and *Glover E. Dowell* for appellant.

*Barnes & Barnes* and *Robert V. Niedner* for respondents.

ANDERSON, J.—This action was brought to recover for an alleged conversion of fire clay and for damage to land from which the fire clay was mined. A jury was waived and the case tried to the court, resulting in a finding and judgment for respondents and against appellant herein, the Wellsville Fire Brick Company, a corporation.

Respondents claim the land and fire clay in question by virtue of a tax deed; and appellant claims title to the fire clay on the land, and easement rights connected therewith, under a warranty deed executed prior to respondents' tax deed, and which warranty deed conveyed outright all of the fire clay on said land.

The record shows Mrs. Sophia E. Loe to be the common source of title to all of the real estate involved, and shows that on July 5, 1913, she conveyed to William J. Gilbert "all the fire clay and flint rock in and upon the following described . . . Land, lying, being and situate in the County of Montgomery and State of Missouri, "to-wit: The east three-quarters of the east half of the northwest quarter of section thirty-four (34), township forty-eight (48) north,

range five (5) west, said tract of land being in the shape of a rectangular parallelogram, and containing sixty acres, more or less.'' The deed, filed and recorded in the office of the recorder of deeds of Montgomery County, Missouri, on August 9, 1913, in addition to conveying all the fire clay and flint rock on said land, conveyed the usual easement rights for the mining and removal of the fire clay.

On March 13, 1917, Sophia E. Loe, by a warranty deed, for a consideration of $50, conveyed to William J. Gilbert the said land by its government description, but erroneously describing the land as being in Township 47 instead of in Township 48. This warranty deed did not mention the fire clay or easement rights.

On May 1, 1922, William J. Gilbert and wife, by warranty deed, conveyed all of the fire clay and easement rights connected therewith upon the land in question to the New Florence Fire Brick Company, a corporation. This deed, filed December 15, 1922, and recorded in the land records of Montgomery County, Missouri, conveyed the property described in the deed of July 5, 1913, from Sophia E. Loe to William J. Gilbert.

On October 22, 1919, William J. Gilbert and wife conveyed to William R. Keith, Jr., the sixty-acre tract of land, by its government description, but erroneously describing the land as being in Township 47 instead of Township 48, and expressly excepting from the conveyance all of the fire clay, flint rock, and easement rights described in the original deed from Loe to Gilbert. On September 27, 1920, William R. Keith, Jr., and wife conveyed this same sixty-acre tract of land by its government description to Noah Bethel. This warranty deed also erroneously described the land as being in Township 47, and also expressly excepted the fire clay, flint rock, and easements appurtenant thereto. On December 6, 1924, William R. Keith, Jr., and wife executed a deed of correction to Noah Bethel, correctly describing the sixty-acre Loe tract as being in Township 48, and also excepting the fire clay, flint rock, and easement rights connected therewith.

Briefly, the evidence discloses that the deed from Gilbert to the New Florence Fire Brick Company conveyed the fire clay and easement rights outright to the New Florence Fire Brick Company. The deeds from Gilbert to Keith and from Keith to Noah Bethel granted to Bethel the surface rights only, and those rights subject to the easement rights held by the New Florence Fire Brick Company.

The sixty acres of land in question were carried on the assessment books for the years 1934, 1935, 1936, and 1937, as follows:

''60 E PT E½ NW NOAH BETHEL, Sec. 34, Twp. 48, R 5.''

Taxes as assessed for the years 1934, 1935, 1936, and 1937, became delinquent. The land was advertised for sale and sold under the provisions of the Jones-Munger Act on November 7, 1938. Stephen J. Oliver, at said sale, became the purchaser of said tract, for the price of $21.51, and on said date received a certificate of purchase

under delinquent tax sale, executed by G. E. Rohrer, then collector of Montgomery County.

On October 14, 1940, said Stephen J. Oliver, by written assignment, sold, assigned, and transferred said certificate of purchase to respondents; and on November 6, 1940, said Stephen J. Oliver, by a separate written instrument, attempted to assign to respondents any and all claims for damages that he might have against the defendants. Thereafter, on November 9, 1940, a collector's deed was issued and delivered to respondents, conveying to them the land, under the following description:

"situate in the County of Montgomery and State of Missouri, and described as follows, namely:

"Sixty (60) Acres East Part, East One Half North West Quarter Section Thirty Four (34) Township Forty Eight (48) Range Five (5) in Montgomery County, Missouri."

The Wellsville Fire Brick Company, appellant herein, and the New Florence Fire Brick Company were separate corporations, but were managed and operated together for their mutual interests, and appellant seems to concede that if the tax deed conveyed title to the fire clay and flint rock, the Wellsville Fire Brick Company would be liable for conversion of all the fire clay removed by it from the premises after the tax sale.

The defendant, Leo Abele, was superintendent of the New Florence Fire Brick Company; and defendant Les Baur was employed by both brick companies to mine and haul fire clay from said land to the premises of both companies. The trial court found in their favor.

During the period from the date of the tax sale, November 7, 1938, to November 20, 1941, both companies engaged in mining and hauling clay from said land. On the latter date, plaintiffs stopped defendants from mining on said land and from hauling and removing fire clay from their stockpile of fire clay on said land.

Plaintiffs offered evidence as to the value of the clay removed from the land during that period. It will not be necessary to review this evidence, since the only issue here is whether or not the tax deed conveyed the mineral rights. If it did, the judgment against appellant should be affirmed. If not, the judgment should be reversed.

We are of the opinion that appellant's contention must be sustained, for in our judgment there never was an assessment of the mineral estate upon which a sale for delinquent taxes could have been predicated. The record in this case shows a severance of the mineral rights from the surface rights, resulting in the creation of two separate and distinct estates of inheritance. [Wardell v. Watson, 93 Mo. 107, 5 S. W. 605; Gordon v. Park, 219 Mo. 600, 117 S. W. 1163; Young v. Young, 307 Mo. 218, 270 S. W. 653, 39 A. L. R. 734.] After the severance, the mineral estate is to be regarded as land, is taxable as such, and should be taxed separate from the surface estate. [Washburn v. Gregory Co., 125 Minn. 491, 147 N. W. 706, L. R. A. 1916D

304; In re Maplewood Coal Co., 213 Ill. 283; Big Creek Coal Co. v. Tanner, 303 Ill. 297, 135 N. E. 433; Brown v. Hodge-Hunt Lbr. Co., 162 La. 635, 110 So. 886; Central Coal & Coke Co. v. Carseloway, C. C. A., 45 F. (2d) 744; Mound City Brick & Gas Co. v. Goodspeed Gas & Oil Co., 83 Kan. 136, 109 Pac. 1002; Sims v. Vosburg, 43 N. M. 255, 91 Pac. (2d) 434.]

The general rule is stated in 2 Cooley on Taxation (4 Ed.), p. 1225, sec. 566, as follows:

"Sometimes one person owns or holds the surface rights of land while another owns or holds the mineral rights. This may result from a deed, lease, or other transfer of greater or less rights. In such a case, the question arises as to whether the holder or owner of the mineral rights can be separately tax because of such interest. Sometimes such taxation is expressly provided for by statute, but even where not so provided it is generally held that the separate mineral interest, where transferred, is independently taxable as real estate; and payment of a tax on the land does not preclude a tax against another person on a mining right in such land. This separate ownership of mineral interests, so as to be taxable, may result from a reservation to the grantor of the mineral interests, on conveying the land, as well as from a conveyance by the owner of the surface to another of the minerals; . . ."

There is no statute in this State which specifically requires the separate assessment of mineral rights. However, Section 10936, Revised Statutes Missouri, 1939 (R. S. A., sec. 10936), provides that for the support of the government, the payment of the public debt, and the advancement of the public interest, taxes shall be levied on all property, real and personal, except as exempted in subsequent sections; Section 10969, Revised Statutes Missouri, 1939 (R. S. A., sec. 10969), provides that the assessor "shall make a complete list of all the taxable property in his county, to be called the assessor's book;" Section 10970, Revised Statutes Missouri, 1939 (R. S. A., sec. 10970), provides that real estate shall be assessed every year; and Section 10971, Revised Statutes Missouri, 1939 (R. S. A., sec. 10971), provides that all lands shall be assessed in the name of the owner "if known, and if not. then the name of the original patentee, grantee, or purchaser from the Federal Government, the State or county, as the case may be."

It is clear, under these statutes, that the mineral estate in this land was subject to taxation separate and apart from he surface estate. It is also clear that it was the duty of the assessor to assess the two estates separately, although his failure to do so would not have invalidated a sale made by the State to foreclose its tax lien. [Sec. 11160, R. S. Mo. 1939 (R. S. A., sec. 11160).]

The question for determination then is whether the subsurface rights were included in the assessment, designated on the assessor's list by its government description, and made in the name of Noah

Bethel, the owner of the remainder of the estate. We think not. The deed creating the separate estate was on record and open to the assessor. It was the assessor's duty to make a correct list of all taxable property in his county, and to ascertain the exact status of titles, so as to comply with the mandate of the statute requiring him to list all property in the name of the owners thereof. We must assume that he performed this duty in this case, and that in listing the property in the name of Noah Bethel he intended to list only the property of Noah Bethel as embraced within the description; and the law will consider as listed only the property of Noah Bethel, the owner named, in the absence of a more particular description which would clearly have included the separate estate of the New Florence Fire Brick Company. There is no such particular description. We must hold, therefore, that the tax sale did not convey the estate of the New Florence Fire Brick Company in the said land.

This same result was reached in a similar case by the Supreme Court of Minnesota, in Washburn v. Gregory Co., 125 Minn. 491, 147 N. W. 706, L. R. A. 1916D 304, and by the Supreme Court of New Mexico in Sims v. Vosburg, 43 N. M. 255, 91 Pac. (2d) 434. In the Washburn case, after holding that where the mineral interests in land are owned separately from the surface interest, such mineral interests should be taxed separately. The court said:

"But it was the duty of the taxing officers, under the statute, as well as under the common law, to assess and tax separately the interests of plaintiff and those of the owner of the surface. The deed separating the mineral rights from the surface rights was of record at the time the tax was levied and became a lien. It is to be presumed that the taxing officers intended to follow the law. These considerations are helpful in reaching a decision whether the description of the property used in the tax proceedings includes the mineral rights. It contains no mention of any such right or interest.

"Manifestly it would have been easy to have described the property taxed as 'mineral rights,' as it would have been to describe it as 'surface rights.' The description used does neither, but is merely the government description. The interest of plaintiff in the minerals was plainly real estate and properly taxable separately. The law directed the assessing officers to tax it separately. If the separate interest of the mineral owner is covered by this description, the result is that his property is taxed without notice to him, under the guise of taxing the property of another. The courts do not favor such a result. In Eastman v. St. Anthony Falls Water Power Co., 43 Minn. 60, 44 N. W. 882, the question was as to what land was included in the description used in the tax proceedings. Mr. Justices VANDERBURGH said: 'The title of each party being of record, it will not be presumed that the separate property of different parties is embraced under one general description in tax proceedings, if the same may be applied and limited to the land of one, and not to that

464

of the other. The description, when applied to the subject-matter, . . . is susceptible of the construction claimed for it by the defendant. An opposite construction would be misleading, . . . and ought not therefore to be upheld.' This language seems particularly appropriate here. The description in the case at bar when applied to the subject-matter, and viewed in the light of the facts and the law as they existed at the time the tax was levied, is fairly susceptible of the construction claimed for it by the plaintiff and adopted by the learned trial court. We therefore decide that the mineral or mineral rights of plaintiff were not covered by the description in the tax proceedings, and were not taxed in those proceedings.

"It does not seem important that the mineral estate may have escaped taxation. That the assessor omitted to assess this interest does not influence the decision in the present case. Nor do we regard as vital the fact that there may be difficulties in arriving at the true value of mineral rights. There is nothing whatever in the law or in this opinion that in any way tends to permit the owner of a separate mineral estate to escape paying taxes on his property.

"We fully appreciate that in Minnesota the tax is upon the land, and that its ownership is not the material thing. But it is nevertheless true that the land of one person should not pay the taxes that ought properly to be paid by the land of another. The judgment in the tax proceedings does not affect the mineral estate of plaintiff because that estate was not described in the proceedings. We do not hold that defendant's tax title is void, but simply that it does not cover the 'land' of plaintiff.''

Since title to the subsurface rights in question did not pass under the tax deed, it necessarily follows that respondents were not entitled to recover in this action.

The judgment therefore, is reversed. *Hughes, P. J.,* and *McCullen, J.,* concur.