# No. 16,101.

## CALVAT ET AL. *v.* JUHAN ET AL.
### (206 P. [2d] 600)

Decided April 18, 1949.  Rehearing denied May ·23, 1949.

562

Messrs. Foard Brothers, Mr. Anthony F. Zarlengo, Mr. Wm. F. Dwyer, for plaintiffs in error.

Messrs. Dines, Dines & Holme, Mr. Harold D. Roberts, Mr. Robert E. More, for defendants in error.

*En Banc.*

Mr. Justice Stone delivered the opinion of the court.

This case concerns title to oil and gas underlying a certain 320-acre tract of land situate near Rangely in Rio Blanco county. Under date of October 28, 1919, The Michigan Trust Company, which was the former owner of the entire estate in said tract, made conveyance thereof to J. A. McNew with reservation as follows: "Reserving however, unto the party of the first part, its successors and assigns, all oil and minerals contained in, on or under the above described premises with the right to enter upon said premises and explore for and remove said oil and minerals, provided however, that in the exploration for and mining of said oil and min-

erals said first party, its successors and assigns, shall be liable to said second party, his heirs and assigns, for all damages sustained to the surface ground of the premises above described; that the measure of damages thus sustained is to be adjusted at the time the damage is done by mutual agreement if possible, but if not, then by arbitration, or by a court of competent jurisdiction, * * *." Under date of August 9, 1945, said The Michigan Trust Company executed deed granting and quitclaiming said premises to Joe T. Juhan, said deed specifically including all oil, gas and minerals contained in, on or under said lands, together with the right to enter thereon and explore for and remove the same. Both said deeds were duly recorded. By virtue of these instruments, defendant in error Juhan and the other defendants in error, all of whom claimed through and under him, have title to the oil, gas and other minerals underlying said lands unless such title has been lost in invitum. Plaintiffs in error claim such to be the case by virtue of the following instruments:

Under date of January 20, 1930, J. A. McNew executed deed of trust to the use of Elbert W. Lloyd, in customary form without reservations, securing payment of the principal sum of $5,000.00, by conveyance of said tract of land.

Under date of December 15, 1930, the county treasurer issued to J. A. McNew tax sale certificate to "oil and gas rights, McNew land," under sale for delinquent taxes assessed thereon, for the first time, for the year 1929.

Under date of September 12, 1934, treasurer's deed, based on said tax sale certificate, issued to J. A. McNew to "Oil and Gas Rights, McNew Land (At the time of said sale the said property was assessed in the name of The Michigan Trust Company). Situated in the County of Rio Blanco and State of Colorado."

Under date of April 27, 1936, public trustee's deed issued to Elbert W. Lloyd, conveying said tract without

reservations in foreclosure of the deed of trust above mentioned.

Under date of May 11, 1942, Elbert W. Lloyd conveyed said tract to plaintiffs Calvat by customary form of warranty deed, without reservations, except the following: "First party does not hereby warrant title to oil, gas and mineral rights on the lands hereby conveyed."

It is the contention of plaintiffs Calvat and their lessee Roberts, that J. A. McNew acquired title to the oil and gas within and underlying said 320-acre tract of land by virtue of the treasurer's deed to J. A. McNew, hereinabove recited; that even though the tax deed may have been void on its face, it was still sufficient to constitute color of title; that plaintiffs Calvat and their predecessors having been in actual possession for more than seven years under claim and color of title made in good faith, and having paid all taxes legally assessed, thereby became owners of the oil and gas by virtue of chapter 40, section 143, '35 C.S.A.; that said title inured to Elbert W. Lloyd as after-acquired property by virtue of the trust deed from J. A. McNew to his use; that through the foreclosure thereof and public trustee's deed thereunder, Lloyd acquired the entire fee title to said oil and gas, and that through conveyance from Lloyd such title was acquired by plaintiffs Calvat.

In answer to these contentions, defendants in error assert that the tax deed to McNew was void in fact because of failure to comply with the statutory requirements; was void on its face as showing such failure, and was void under the statute of limitations as a bar by reason of indefinite and insufficient description. Further, that the seven-year statute of limitations relied on was not applicable because of failure of description; failure of claim in good faith; failure in payment of taxes, and failure of actual possession. Finally, that even if we assume that the tax deed was valid, any title acquired thereunder by McNew did not inure to Lloyd as after-

acquired property, but passed to defendants in error by a quitclaim deed to the premises in question, with no mention of oil or gas rights, from J. A. McNew to Charles S. Hill, dated the twenty-third day of March, 1945.

Upon trial of the issues, the court found and held that the tax deed to McNew was void because of uncertainty in the description of the premises and therefore "irremediable by any curative statute," and that the deed was further void on its face in that it appeared therefrom that the tax sale was not commenced within the period required by law. It further held that regardless of the uncertainty of description, the treasurer's deed, even if sufficient to constitute color of title, did not make operative said section 143, for the reason that there was not claim thereunder in good faith; that taxes were not paid on the oil and minerals for the full seven years, and that there was no actual possession for such period.

Disregarding the question of the sufficiency of the description in the treasurer's deed under which plaintiffs in error claim title, that deed is otherwise void on its face in that it recites that the sale upon which it was based was commenced and held on a day subsequent to that designated by the statute and contains no recital of any cause for such delay, and in that it further recites that the land thereby conveyed was the least quantity bid for at said sale, instead of reciting that it was sold to the person offering to accept the lowest rate of interest or that only a bid at the maximum rate was received. Being void on its face, the deed itself conveyed nothing; at most, it could be only color of title and, as such, constitute only one of the several prerequisites necessary to subsequent transfer of the title by virtue of said section 143. In order to accomplish such subsequent transfer under our seven-year statute here relied on, it was necessary for plaintiffs

in error to establish the other necessary prerequisites, to wit: (1) Claim to such title made in good faith; (2) actual possession continued for seven years, and (3) payment of all taxes legally assessed. Assuming that the evidence does not overcome the presumption of claim in good faith, although the trial court found to the contrary, there was failure of proof of actual adverse possession of the oil and gas at any time by plaintiffs in error or their predecessors. Title thereto had been severed from the title to the surface by the deed from The Michigan Trust Company to McNew, with its reservation of oil, gas and minerals and right to enter and explore therefor. After such severance, possession of the surface did not constitute possession of the severed mineral estate. The possession of each, like the title, became distinct from that of the other. *J. R. Crowe Coal & Mining Co. v. Atkinson,* 85 Kan. 357, 116 Pac. 499; *Foss v. Central Pacific R. Co.,* 9 Cal. App. (2d) 117, 49 P. (2d) 292. "Hence it is settled that when by a conveyance or reservation a separation has been made of the ownership of the surface from that of the underground minerals, the owner of the former can acquire no title by the Statute of Limitations to the minerals, by his exclusive and continual enjoyment of the surface. Nor does the owner of the minerals lose his right or his possession by any length of nonuser. He must be disseised to lose his right; and there can be no disseisin by act that does not actually take the minerals out of his possession." *Armstrong v. Caldwell,* 53 Pa. St. 284, quoted from 2 Thornton, Oil and Gas (5th ed.), p. 777, §464. "And although the landowner has held adverse possession of the surface of the land, under a deed purporting to convey the entire title and interest in the land for a number of years, as for the number of years land must be held adversely to create a title in the possessor, paying taxes and the like, such possession is not adverse to the reservation of the minerals made in a

deed of his remote grantor. To be effective he must take actual physical possession of the minerals under the surface, or so exclude the lessee or grantee that he cannot enter on the land to bore for oil or gas." 2 Thornton, Oil and Gas (5th ed.), p. 780, §466; *Flynn v. Fike,* 291 Ky. 316, 164 S. W. (2d) 470. Such lack of actual possession is also fatal to any claim under chapter 40, section 146, '35 C.S.A., whereof no mention is made in the briefs.

It is urged in behalf of plaintiffs in error that after the issuance of the tax deed to McNew, the interests in the surface and in the oil and gas were united and were so returned for taxation, but the tax deed to McNew being void, he acquired thereby no interest in the oil and gas which he could unite with his title to the surface. Since the titles were not united, possession with title of the surface was not constructive possession without title to the oil and gas. Plaintiffs in error failed to establish actual possession of the oil and gas adverse to the claim and title of defendants in error. Such failure is fatal and it is unnecessary to discuss the other issues raised, except one.

It is urged, finally, that title to the oil and gas was lost because of laches on the part of The Michigan Trust Company, and *Kobey v. Herron,* 105 Colo. 331, 98 P. (2d) 473, is cited to the effect that relief by way of setting aside a tax sale and canceling a tax deed will be denied where there are no equities or only minor irregularities working no real prejudice. The question of laches was not involved in the Kobey case. The tax deed there sought to be avoided was dated August 5, 1935, action in ejectment thereunder was filed November 1, 1935, and defendant by answer attacked the validity of the tax deed for alleged irregularities. The trial court held the tax deed valid and on review in this court error was predicated on the rulings of the court as to compliance with and proof of antecedent require-

ments and as to sufficiency of recitals in the deed. No question was posed or finding made as to laches or equities. Accordingly, the statement in the opinion was dictum, and the rule therein announced is not supported by other decisions of this court. Further, it appears to be well established that courts will not invoke equitable defenses to destroy legal rights where statutes of limitation are applicable. *Phelan v. Roberts,* 182 Okla. 202, 77 P. (2d) 9. "The plaintiff has argued in his brief that the defendant's title is barred by laches. It is not contended that the statute of limitations has run or adverse possession been established. It is merely contended that, because defendant permitted the tax sale proceedings to be had without objection and without the assertion of his title, he ought not now, in equity be permitted to assert his title. This contention is without merit. The defendant's claim is one of legal title, and is governed by the statute of limitations. Laches apply to equitable demands. If a legal right gets into equity, the statute governs. *Waldron v. Harvey,* 54 W. Va. 608, 46 S. E. 603, 102 Am. St. Rep. 959." *Fisher v. Davis,* 77 Utah 81, 291 Pac. 493. Again, prejudice must be shown. "The claim that appellee has been guilty of laches which should bar her right is destitute of merit. Mere delay alone, short of the period fixed as a bar by the statute of limitations, will not preclude the assertion of an equitable right. It is only when by delay, and neglect to assert a right, the adverse party is lulled into doing that which he would not have done, or into omitting to do that which he would have done, in reference to the property, had the right been promptly asserted, that the defense of laches can be considered. There is no pretense of any prejudice resulting to appellants by reason of the nonaction of appellee, in any respect." *Gibbons v. Hoag,* 95 Ill. 67, quoted in *Great West Min. Co. v. Woodmas of Alston Min. Co.,* et al., 12 Colo. 46, 20 Pac. 771. Further, "There is no laches

merely because of a failure to pay taxes and because the land has enhanced in value." Cooley's Taxation (4th ed.), §1509, quoted in *Jones v. McNabb,* 184 Okla. 9, 84 P. (2d) 429.

In the instant case, there was no reason for assertion of right or title by The Michigan Trust Company, as neither the Calvats nor their predecessors ever took possession of the oil or gas or interfered with the possession thereof. There is no evidence of money expended or action taken or other prejudice by reason of the delay in assertion of title, and every presumption supports the finding of the trial court adverse to the claim of laches.

Accordingly, the judgment is affirmed.