## No. 16,566.

MITCHELL ET AL. *v*. ESPINOSA ET AL.

(243 P. [2d] 412)

Decided March 17, 1952. Rehearing denied April 14, 1952.

Messrs. JOHNSON & ROBERTSON, for heirs of Paul Mitchell.

Messrs. EAKES & EAKES, for defendants in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

WE will herein refer to the parties as they appeared in the trial court where plaintiffs in error were defend-ants, and defendants in error were plaintiffs, or by name.

The action was instituted under the provisions of Rule 105(a) R.C.P. Colo., for the purpose of obtaining a complete adjudication of the rights of the parties in and to real estate consisting of 160 acres of land in La Plata county, Colorado. The several parties, plaintiffs and defendants, claimed interests in the oil and gas underlying the surface of said land, under circumstances which will hereafter more fully appear.

The trial court found the issues in favor of plaintiffs, and entered judgment to the effect that the claims of defendants to an interest in said oil and gas were without foundation in law. Defendants seek review of this judgment by writ of error.

The United States of America issued a patent to the real estate in question to one Paul Mitchell on June 1, 1912. Mitchell by deed dated November 8, 1926, conveyed the property to A. W. Hamer. A printed form of warranty deed was used. In the space provided for the description of the property conveyed in the granting clause of said deed, nothing was mentioned other than the land in question and no reservation of any interest by the grantor was made; however, in the habendum clause of said deed, in the space provided for mention of any exceptions, limitations, or liens upon the title otherwise conveyed, is the statement, "except one half of oil right reserved by Paul J. Mitchell."

On November 15, 1926, A. W. Hamer executed a deed of trust upon said real estate to secure the payment of a note in the sum of $800.00 payable to Mitchell. In this deed of trust the property was represented to be free and clear of all liens and encumbrances whatsoever, "except one half of oil right reserved by Paul J. Mitchell." The warranty deed and the deed of trust above mentioned were filed for record on November 19, 1926.

The said real estate was sold at the tax sale held by

the treasurer of La Plata county on the 6th day of December, 1929, and W. Bruce Jacobson purchased the tax sale certificate. He thereafter made application for the issuance of treasurer's deed, and on November 29, 1932, the treasurer gave notice of said application and caused the same to be published.

The deed of trust above mentioned was not released by the Public Trustee until after said notice was given and after tax deed had issued. Mitchell therefore was the beneficiary under the trust deed, as well as the holder of any rights which might arise under the asserted reservation of oil in the deed from him to Hamer at the time the notice was published. The notice was addressed, "To Whom it May Concern, and more especially to A. W. Hamer and Paul J. Mitchell," and contained, inter alia, the following statement: "that the statutory period for redemption from said sale for taxes will expire March 5, 1933; that a Tax Deed to said property will be executed and issued to W. Bruce Jacobson, lawful holder of said Certificate of Purchase on the 6th day of March, A. D. 1933, unless the same has been redeemed theretofore." Mitchell received the published notice as evidenced by the return receipt of registered mail and his letter making inquiry concerning the amount necessary to redeem.

Treasurer's deed was not issued until March 21st, 1933, or fifteen days after the time fixed by the notice for its issuance; thus an additional period of fifteen days was open, to those claiming interests, within which redemption might have been made. Jacobson was the grantee in the treasurer's deed. Apparently to avoid the necessity of an action to quiet title upon the tax deed, Hamer and Mitchell quitclaimed by separate instruments to Jacobson. However in the quitclaim deed from Mitchell to Jacobson a specific reservation was made in the property conveyed, as follows: "Save and except a one half interest in any oil as reserved by me in my deed to Arthur W. Hamer."

On October 10, 1946, Jacobson conveyed the land to plaintiff Espinosa by quitclaim deed. Other plaintiffs acquired their alleged interests in oil beneath the surface of the land from him. No assessment for taxes ever was made upon any oil deposits beneath the surface of said land following the claimed severance thereof by the alleged reservation. As far as taxes assessed or paid upon said property were concerned, there was no change whatever at any time relating to the assessment or collection thereof.

The defendants who appeared in the action are the heirs at law of Mitchell. They claim the one-half interest in oil beneath the surface of the land which they allege was reserved by their intestate. They contend that the reservation of oil was fully effective and valid in law; that the tax deed which is the basis of plaintiffs' reliance is void; and that even if said treasurer's deed is valid, it did not convey the oil rights reserved, because no taxes ever had been assessed against them following their severance from the land by the reservation of record.

Plaintiffs oppose each of the contentions of defendants, and in addition thereto urge as cross specification of points, that the trial court committed reversible error in allowing defendants an extension of time, within which to lodge the reporter's transcript, after expiration of the time fixed by Rule 112(f) R.C.P. Colo., in the absence of proper showing of excusable neglect.

Questions to be Determined.

First: *Is the tax deed void for the reason that it was not "executed and issued" until fifteen days following the date fixed by the notice for issuance of the treasurer's deed?*

We answer this question in the negative. In so doing we fully realize that we do not follow the majority opinion of this court in the recent case of *Tewell v. Galbraith*, 19 Colo. 412, 205 P. (2d) 229, in which the identical question, now reconsidered, was answered in the af-

firmative. We are fully satisfied that our opinion in that case was erroneous, and are now, for the first time, afforded an opportunity of correcting the manifest error there made.

■ The only purpose of the law in requiring the publication of notice that application has been made for the issuance of a treasurer's deed following a sale of realty for taxes, is to protect the interest of the fee-title owner and afford him an opportunity for redemption at any time prior to the actual issuance of the deed. If the deed does not actually issue until a date subsequent to that fixed by the notice as being the day when it will issue, no substantial right of the person entitled to redeem has been lost or impaired; on the contrary, the right to redeem continues, in this case for fifteen days, beyond the time fixed by the notice.

The defaulting taxpayer should not be permitted to capitalize on this extension of redemption time, which tended only to enlarge his rights, and make the extension the means by which the treasurer's deed is destroyed. The deed could not have been questioned by him had it issued on March 6, 1933. Its subsequent issuance deprived him of no substantial right, and he has no right to complain of a delay in action that kept alive for him a right that would have been lost to him at once by prompt action. Reconsideration of the question prompts us to adopt as the sound rule the views expressed in the dissenting opinion in *Tewell v. Galbraith, supra.*

■ Second: *Under the admitted facts, was there a legal reservation by Mitchell of the one-half interest in oil, for which defendants contend?*

This question is answered in the affirmative. On behalf of plaintiffs it is argued that the language used in the deed from Mitchell to Hamer was wholly insufficient to create any reservation by Mitchell of any interest whatever in the land described therein. It is contended that since the words of the deed on which defendants rely are not part of the granting clause, and appear only

in covenant of seisen or habendum clause, that no reservation of any interest is established as a matter of law. *Million v. Botefur,* 90 Colo. 343, 9 P. (2d) 284, and *Skerritt Investment Co. v. City of Englewood,* 79 Colo. 645, 248 Pac. 6, are cited as authority for the general rule that a recital in the covenant of seisen which is repugnant to an express unrestricted grant by previous language in a deed, is void. We have examined these cases and fail to find any support therein for the contentions of plaintiffs under the facts in the instant case. In *Million v. Botefur, supra,* the deed was "in the usual and customary form of a warranty deed with granting and habendum clauses." There was in that case, as here, an insertion of language in the habendum clause. The inserted language there appearing was as follows: "Provided, however, the said party of the first part, hereby expressly reserved to herself the use and enjoyment of said premises and the right to receive the rents, issues and profits arising therefrom, and to occupy said premises as a home, for and during the term and period of her natural life, and at her death said life estate hereby reserved in said premises, together with the fee title thereto to vest absolutely and in fee simple to the said party of the second part." Notwithstanding the fact that these words appeared in the habendum clause we there held that, "The apparent and reasonable construction to be applied to the terms of the proviso is that the life estate reserved to the grantor terminated upon her death leaving the fee simple title theretofore vested in the grantee, free and clear from any reserved interest."

Under somewhat similar facts we held in the recent case of *Percifield v. Rosa,* 122 Colo. 167, 220 P. (2d) 546, that a well-considered rule of construction of deeds is "one which will give force and effect to all of the provisions and terms of the deed which the parties intended at the time of its execution, and if a deed can be construed and interpreted so as to make all of its provisions operative and effective, that construction must be

adopted." In that case we held that, "the paramount purpose in construing a deed is to ascertain the intention of the parties, and this is to be gathered from a consideration of the deed itself, if possible, rather than from isolated clauses found therein." Considering the deed in the case at bar as a whole, it is clear that the parties intended that one-half of the oil rights in the land was reserved to the grantor Mitchell.

 Third: *Where a reservation of oil rights is contained in a deed to land which is thereafter assessed for taxes without change or recognition of the severance of the reserved oil interest; where the owner of said reserved oil interest took no action to cause it to be assessed; and where no assessment was made on said severed oil interest; will a tax deed issued for unpaid taxes accruing subsequent to the date of execution and recording of the deed under which the severance of oil interests was effected, convey to the grantee in the treasurer's deed the oil rights theretofore severed and reserved?*

This question is answered in the negative. The trial court included in its findings the following: "The next question with which we are concerned is whether the Tax Deed herein foreclosed the rights of the owner of the reserved interest. The reservation was effected in warranty deed from Paul J. Mitchell to A. W. Hamer, dated November 8, 1926, and the deed was filed for record on November 19, 1926. It became the duty of the owner of the reserved rights to return that interest, by way of Schedule to the County Assessor, for taxation, between March 1, and May 1, 1927. (1935 CSA Ch. 142 Sec 48.) Since there is no showing to the Court that this was done, it must be assumed that such was not done. True the deed had been previously recorded, but still the primary obligation rests upon the landowner (sic. the owner of *interests* in land) to list his land (interests therein) for taxation, in default of which he cannot be

heard to avail himself of an erroneous subsequent sale. Richards v. Kerr, 53 Colo. 376."

We are satisfied that where oil or mineral rights have been severed from real estate and are owned by persons other than those who hold the surface rights, a failure on the part of the owners to report the mineral rights to the assessor will not supply the essential requirement of an assessment of those severed rights as a condition precedent to a valid tax deed covering said severed interest in land. In the instant case we are concerned with whether any valid assessment ever was made on the severed oil interest. If no valid assessment was made, no valid tax sale of that property could be had. Identification of the person who was at fault for the lack of a valid assessment is of no importance. In *Richards v. Kerr,* 53 Colo. 376, 127 Pac. 232, upon which the trial court relied, there was no severed estate involved. There was but one freehold estate, and that single freehold estate was duly assessed. The objection in that case was that the single freehold estate had been assessed in the name of one who no longer owned it, and our court properly held that the new owner, who had failed to see to it that the property was assessed to him, could not invalidate the treasurer's deed because of the fact that the property had been assessed in the name of his predecessor in interest. The facts in the instant case are entirely different and raise very different questions.

As provided by pertinent provisions of the statutes of Colorado dealing with the assessment of property (Sections 2, 17, 20, 79 and 139, all in chapter 142 '35 C.S.A.) all taxable property shall be assessed each year; all property is subject to taxation unless specifically exempted by law; real estate includes land, minerals and quarries in and under the land, and improvements; and "every tract of land, and each town or city lot, shall be valued and assessed separately" when owned by different persons.

We said in *Calvat v. Juhan,* 119 Colo. 561, 206 P.

(2d) 600: "Title thereto [oil and gas] had been severed from the title to the surface by the deed from The Michigan Trust Company to McNew, with its reservation of oil, gas and minerals and right to enter and explore therefor. After such severance, possession of the surface did not constitute possession of the severed mineral estate." In the instant case, from and after the date of severance of the oil rights, there were two separate and distinct freehold estates in the property which theretofore had been assessed as a unit. 58 C.J.S. p 328, §156. Each of these estates became subject to separate assessment. In *Union Pacific Railroad Co. v. Hanna*, 73 Colo. 162, 214 Pac. 550, we said: "That mineral reservations, not being exempt by Constitution or statute, are assessable under the laws of this state is beyond question, even if they are of a nominal value only. A mineral reservation is an interest in land, and is 'real estate' by the very terms of our statute."

■ It is clear that before a valid tax deed can be issued by a county treasurer for nonpayment of taxes there must have been a valid assessment of the property subjecting it to the payment of taxes followed by a default in the payment thereof. Under section 81, chapter 142, '35 C.S.A., a sufficient description "for the assessment of such lands" is mandatory. Where a separate and distinct estate consisting of "mines, minerals and quarries in and under" specific land is created by reservation thereof, a sufficient description of this property for assessment purposes requires specific reference to the severed estate. Thus there must be in the assessment a sufficient description of the estate in oil, such as "all oil and gas beneath and underlying" the specific quarter section of land, or other description of surface property, before it can be held that severed oil rights have been assessed for the payment of taxes. A valid assessment is a prerequisite to the issuance of a valid treasurer's deed. *Reagan v. Dick*, 88 Colo. 122, 293 Pac. 333.

█ █ As already stated, our statute requires separate assessment where separate estates are owned by different persons. If the separate estate of the owner of the oil interest is held to be included in a description by section number, without more to identify the severed interest, the result would be that the estate in oil is taxed without notice to the owner, "under the guise of taxing the property of another. The courts do not favor such a result." *Washburn v. Gregory Company,* 125 Minn. 491, 147 N.W. 706; *Ohio Oil Co. v. Wyoming Agency,* 63 Wyo. 187, 179 P. (2d) 773; *Sims v. Vosburg,* 43 N. Mex. 255, 91 P. (2d) 434; *Kernkamp v. Wellsville Fire Brick Co.,* 237 Mo. App. 457, 170 S.W. (2d) 692; *Skelly Oil Co. v. Johnson,* 209 Ark. 1107, 194 S.W. (2d) 425. We hold that the tax deed which forms the basis of plaintiffs' case conveyed none of the oil rights reserved by the defendants' intestate, and that the trial court erred in holding otherwise.

█ Fourth: *Did the trial court err in allowing defendants an extension of time within which to lodge reporter's transcript?*

This question is answered in the negative. After expiration of the sixty days provided by Rule 112(f) R.C.P. Colo., for the preparation and lodging of reporter's transcript, the trial court on motion of defendants extended the time for filing said transcript. Plaintiffs, by cross specification of points, allege prejudicial error. They contend that no sufficient showing of excusable neglect was made to justify the extension of time under Rule 6 C(b) R.C.P. Colo., '35 C.S.A. Generally, the granting of such a motion rests within the sound discretion of the trial court, and the action taken will not be disturbed on review in the absence of a clear showing of abuse of that discretion. We find no merit in the cross specification of points.

The judgment is reversed and the cause remanded with directions to enter judgment in harmony with the views expressed herein.

MR. JUSTICE HOLLAND concurs in that portion of the opinion which holds that the tax deed does not convey title to oil and gas rights which were severed by proper reservation at a time prior to accrual of the taxes for the nonpayment of which the tax deed issued. He is of the opinion that since determination of that question is decisive of all questions involving the tax deed, it is unnecessary and unwise either to adhere to, or overrule, the case of *Tewell v. Galbraith, supra.*

MR. JUSTICE STONE dissents.

MR. JUSTICE HOLLAND concurs specially.